**CITY OF BRANSON, Respondent,**

v.

**John R. BIEDENSTEIN, et al., Appellants,**

**Ethel Southard, Appellant-Intervenor.**

**No. 61587.**

Supreme Court of Missouri,
En Banc.

July 14, 1981.

Rehearing Denied Aug. 10, 1981.

---

J. B. Carter, John H. Lamming, Clayton, for defendants-appellants.

Peter H. Rea, Branson, for respondent.

SEILER, Judge.

This is an annexation case. On July 23, 1979, the Hon. Jack A. Powell, Special

Judge, found in favor of respondent City of Branson and authorized it to proceed with the process of annexation of three separate tracts of land. Appellants appealed to this court. We have jurisdiction under Mo. Const. Art. V, § 3 because appellants challenge the constitutionality of § 71.015, RSMo 1969 [1] (commonly referred to as the Sawyers Act) and § 79.020, the latter of which provides for the submission of the proposed annexation to the voters of the annexing city only, and not to the voters of the areas sought to be annexed.

Appellants allege that the trial court erred in granting judgment in favor of respondent because: 1) the annexation is not reasonable or necessary; 2) respondent failed to choose a class of defendants that would adequately represent the entire class; and 3) § 71.015 and § 79.020 are unconstitutional in that they deprive the proposed annexees of equal protection and due process by not permitting them to vote on the proposed annexation. Appellants also argue, apparently in the alternative, that § 71.015, RSMo Supp.1980, which does permit the proposed annexees to vote, applies to this case.

■ In annexation cases, it is sufficient to show that the legislative decision to annex is fairly debatable. *Binger v. City of Independence*, 588 S.W.2d 481, 485 (Mo. banc 1979). *See also City of Jefferson v. Smith*, 543 S.W.2d 547, 549 (Mo.App.1976). Our scope of review is to "examine the record to determine whether there is substantial evidence to support the legislative decision. . . . [I]f the court concludes from the record that there is substantial evidence that the annexation was reasonable and necessary, then the issue was at least debatable and the legislative decision must be permitted to stand." *Binger, supra* at 486. *See also City of Flat River*, 596 S.W.2d 446, 448 (Mo.App.1979).

At this point, we commend Judge Powell for his written opinion and explicit findings

of fact and conclusions of law, all of which helped this court considerably in getting at the real issues and the important testimony in the lengthy record.

## I. *The Reasonableness and Necessity of the Annexation*

Branson seeks to annex three tracts of land. Tract I (1460 acres) envelops Highway 76, west of Branson, along which is much commercial development. Tract II (90 acres) is north of Branson and is solely owned and occupied by a married couple. It contains two platted subdivisions and portions of the tract overlook Lake Taneycomo. Tract III (540 acres) is north of Branson and is mainly suited for residential development. It contains four platted subdivisions, two of which are substantially developed.

■ We find that there was substantial evidence to support the trial court's finding that the reasonableness and necessity of the annexation of all three tracts was fairly debatable. For a list of criteria used to aid in the determination of the reasonableness and necessity of an annexation, *see City of Perryville v. Brewer*, 557 S.W.2d 457, 462 (Mo.App.1977). We shall briefly examine the main factors we considered in reaching this result.

### A. *Spillover Growth*

The evidence tended to show that the city of Branson's population had grown slightly over the past 18 years, but that the population of the rest of Taney County had grown a great deal more over the same period. Although appellants argued that the growth of Taney County's population was due to other attractions in the region we cannot discount the importance of the city of Branson in that growth. There was substantial testimony to show that part of the

---

1. Unless otherwise indicated, all citations are to RSMo 1969.

growth in Tracts I and III was spillover growth from Branson.[2]

## B. *Lack of Residential, Commercial and Industrial Land Within Branson*

There was a great deal of testimony to the effect that Branson did not have enough useable land within its limits to satisfy the demand and that the growth outside the city had been a natural expansion of the city. Appellants argued that there was as much as 700 acres of unused land within the city limits. At first blush, such a statistic would belie the need for territorial expansion through annexation. Respondent, however, pointed out through the testimony of several witnesses that much of the unused land is not useable for a variety of reasons. For example, the old part of Branson is laid out in 25 foot lots necessitating the purchase of more than one lot even for a single family residence. Although much of the land in other parts of Branson could theoretically be developed, many witnesses testified that to do so was economically unfeasible because of the terrain.

The testimony of Leon Wagner, a real estate broker, is supportive of the result reached by the trial court. He testified that he had been involved, either as the property owner or as the real estate agent or broker, in the establishment of 62 businesses along Highway 76 in Tract I. It was Mr. Wagner's opinion that a majority of the businesses had first inquired about, or attempted to find, land within the city limits of Branson because of the services more readily available in Branson but had been unable to find suitable land within the city limits. Although it may be arguable that Branson does have sufficient land within its city limits to meet anticipated needs, we think there is sufficient evidence to show otherwise.

## C. *The Need for a Central Sewer System*

Foreseeing the need for a central sewer system for the entire area, the city of Branson, along with Taney County, commissioned a study to be made. The result was a "201 Facilities Plan." The conclusion of the plan, as well as that of many witnesses, was that there was a need for a central sewer system to protect Branson and Lake Taneycomo from the pollution caused by the effluent flowing from the three tracts sought to be annexed, all of which were "upstream" from or at higher elevations than Branson and the lake. Appellants contended that there was no reported failure of an individual treatment system in any of the three tracts. The great weight of testimony tended to show that although an individual system might not fail, the accumulation of systems within a certain area can cause problems. The soil in the areas sought to be annexed was, for the most part, not suited for soil absorption systems and would not prevent the effluent from draining towards Branson. Further, the quality of effluent required by federal regulations of individual systems was apparently inferior to that required by the Missouri Clean Water Commission of the effluent discharged into Lake Taneycomo.

Branson had sought federal and state funding for the sewer system and the testimony seems to show that Branson is the governmental authority which should supervise the project. Annexing the proposed tracts would facilitate the task.

## D. *Planning, Zoning and Municipal Services*

The general testimony was that planning and zoning would be beneficial to both Branson and the tracts sought to be annexed. Hubert Riebold testified that proper planning was essential for the development of the old Branson Airport (119 acres

---

**2.** Although spillover growth is not relevant to Tract II, we note that the annexation of Tract II particularly would help make more regular in shape the boundary line of Branson. *See City of Perryville v. Brewer,* 557 S.W.2d 457, 462 (Mo.App.1977).

owned by Branson located in Tract I). Mr. Riebold found a need for a well planned ingress-egress system, for proper street planning, and for proper storm water planning. One of the specific benefits of street planning would be a relief artery for Highway 76 which is plagued with bumper-to-bumper traffic during the tourist season.

With regard to municipal services, the testimony showed that the annexed areas would receive lower water rates, greater water pressure, possibly lower fire insurance rates, police patrolling that is not offered by the county sheriff's department and the benefit of the other services offered by Branson such as traffic control, street cleaning and maintenance. A significant point with regard to both planning and municipal services was the desirability of laying pipes now to provide water to the areas sought to be annexed rather than waiting until a later date when the land would be more developed, making the laying of pipes more difficult.

One effect of all of this would be to increase the value of the land to be annexed. Mr. Riebold testified that the value of the old Branson Airport, located in Tract I, was approximately $600,000, or, as an investment, in the neighborhood of $1,000,000. If city services were available, the value of the property would be from $1,600,000 to $1,800,000.

Still, we are not unmindful of certain problems or disadvantages that would arise from the annexation. First, the budget of the special fire district, which serves areas outside Branson, will be adversely affected. DeWayne Bashan, director of the special fire district, testified that the annexation would cause a decrease in revenue of slightly less than one-third, that it would be close but that the fire district could survive. Ernest Brazwell, who was also with the special fire district, testified that they would be able to carry on after the annexation.

Another problem would be with supplying electrical power to the annexed areas. If the annexation occurred, White River REA, which services most of the areas sought to be annexed, would not be permitted to take on more customers in what would then be Branson. Empire District Electric Company, White River's competitor, would then have to obtain additional right-of-ways to install lines to service the same area, thereby creating additional expense for Empire.

These problems notwithstanding, we cannot but conclude that the evidence shows the reasonableness and necessity of the annexation to be at least fairly debatable and that it should proceed, or not, according to the dictates of the voters.

## II. *The Adequacy of the Class Representation*

■ We agree with the trial court's conclusion that appellants incorrectly argue that there was not a full and adequate representation of the classes of inhabitants affected by the proposed annexation. The testimony indicates that the named defendants presented a cross-section of the populations affected and that there was no collusion in choosing the defendants. Appellants presented no evidence to the contrary. Further, the trial transcript and appeal demonstrate to us that the potential annexees' rights were vigorously defended.

## III. *The Question of Separate Elections*

■ Appellants argue that the procedure of allowing only the voters in the annexing city to vote on the annexation is unconstitutional because it deprives the proposed annexees of equal protection and due process under Mo.Const. Art. I, §§ 2 and 10 and U.S.Const. Amend. XIV. Appellants, also argue, in the alternative, that the recently amended § 71.015, RSMo Supp.1980 which was enacted subsequent to the declaratory judgment action, effective May 13, 1980, *see* S.S.H.B. 1110, Laws of Mo.1980, p. 253, applies to this case and permits the proposed annexees to vote in a separate election. Because we decide that the voting provi-

sions of § 71.015, RSMo Supp.1980 do apply (*see* discussion below), we need not consider the constitutional question regarding the old statute.

Section 71.015 is procedural. *Binger, supra* at 485. *Cf. City of Kirkwood v. Allen,* 399 S.W.2d 30, 35 (Mo. banc 1966). A statute dealing with procedure only, is applicable to pending actions such as this one. *See City of Kirkwood v. Allen, supra* at 35 and cases cited therein. In *City of Kirkwood,* as here, the statute pertaining to annexation was changed while the case was pending. Kirkwood had started a declaratory judgment proceeding under § 71.015, RSMo 1959. Before the declaratory judgment became final, several sections were added in 1963 to Chapter 71, one of which called for a simultaneous election in both the annexing city and in the area to be annexed. Prior to this change, an election would have been required in Kirkwood only. The court concluded the 1963 change applied and rejected Kirkwood's contention that the 1963 amendment should apply only prospectively. It considered the 1963 act as pertaining to procedure. Therefore, its application to the pending action did not violate the constitutional provision against retrospective operation of laws. Mo.Const. Art. I, § 13.

■ The amended § 71.015 establishes several new and more onerous requirements as conditions precedent to annexation. For example, subsection (1) requires that certain contiguous boundary requirements be met. Subsection (2) requires development of a "Plan of Intent" to provide services to the annexed area and a public hearing, and places a limit on the future effective date. Subsection (3) requires rather strict notice requirements as to all fee owners of record and residents in the area proposed to be annexed. Subsection (4) requires presentation of the "Plan of Intent" at the public hearing, with supporting evidence bearing on major services presently provided by the city, a proposed time schedule for providing such services to residents in the annexed area within three years, and information as to city assessment, tax rates and how the city proposes to zone the annexed area.

Subsection (5) requires a declaratory judgment action by the city, following the hearing, if the city council adopts an ordinance to annex. One of the requirements of the petition is that it state facts showing the ability of the city to provide municipal services to the annexed area within three years after the annexation becomes effective.

Subsection (6) deals with the election procedures and is discussed later herein.

Subsection (7) provides that failure to provide municipal services within the three year period will permit an action to be brought for deannexation.

Subsection (8) exempts any city which has filed a declaratory judgment action prior to May 13, 1980 from compliance with subsection (5). Subsection (5) as noted, relates to the declaratory judgment action which must be filed. In order to comply with subsection (5), the city must be in a position to satisfy the requirements of the preceding subsections (1) through (4), mentioned above. Being relieved, however, by subsection (8) from compliance with subsection (5), it would follow that respondent would not be expected to comply with subsections (1) through (4), either. The legislature's common sense approach is evident. It would be impossible for a city such as Branson which had proceeded in good faith under the old § 71.015 to comply with the new requirements contained in subsections (1) through (5) without starting completely anew. It is clear that the legislature intended to relieve cities which had already commenced annexation proceedings from complying with subsection (1) through (4), as well as subsection (5), of the amendment. Subsection (7), which creates a cause of action for deannexation where the municipal services have not been provided within three years, likewise was not intended to apply to a city which, as here, was not required at the time it commenced annexation proceedings to furnish municipal serv-

ices within three years of the effective date of annexation.

On the other hand, there is no reason why the dual election procedure set out in subsection (6) should not apply to a pending annexation. A dual election can be held on the proposition just as well as could a single election. It is not a requirement which, if observed, would require invalidation of what has already been done or would require that which it is now too late to do.

The judgment is affirmed.

All concur.