**CITY OF EUREKA,**
**Plaintiff-Respondent,**

v.

**Travis HALL, et al., Defendants,**

**and**

**St. Louis County, Missouri,**
**Intervenor-Defendant.**

No. 48245.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 29, 1985.

Motion For Rehearing and/or Transfer to Supreme Court Denied March 26, 1985.

Application to Transfer Denied
April 30, 1985.

Jerome Wallach, Wallach & Steele, St. Louis, for plaintiff-respondent.

Thomas W. Wehrle, St. Louis County Counselor, Clayton, for intervenor-defendant.

SIMON, Presiding Judge.

This is an annexation case in which the County of St. Louis, a first class constitutional charter county, appeals from a declaratory judgment of the Circuit Court of the County of St. Louis which granted the City of Eureka authorization to proceed with annexation of approximately 1,243 acres (about 1.94 square miles) of land situated in unincorporated St. Louis County. We affirm the decision of the trial court.

Eureka is a municipal corporation organized and existing under the laws of the State of Missouri, as a city of the fourth class in St. Louis County, Missouri. On June 19, 1979, Eureka's Board of Aldermen adopted a resolution seeking to annex property described in the resolution. This property is contiguous and adjacent to the current city limits of Eureka and contains about 132 residents within its 1,243 acres. Six Flags Over Mid-America, a recreational amusement park, encompasses about one-half of the proposed annex area, although part of the Six Flags property remains undeveloped. The other major commercial development in the annex area is a Ramada Inn, with the remainder of the annex area largely rural. On August 7, 1979, the City of Eureka and the annex area held an election, in accordance with the applicable statutory provisions, in which a majority of the votes cast within Eureka (394–21) and within the annex area (37–25) approved the proposed annexation. Eureka then filed its petition for declaratory judgment on September 17, 1979. Subsequent to Eureka's filing its declaratory judgment action, Section 71.015 RSMo 1978 governing annexations was amended, effective May 1980. The nineteen days of trial in 1983 spanning eight weeks resulted in a voluminous record of more than 1700 pages in transcript and a multitude of exhibits from which the trial court's lengthy findings of fact and law were culled. The trial court issued its judgment on December 16, 1983, granting Eureka authorization to proceed with the annexation.

On appeal, St. Louis County (County) pinpoints as error: (1) the failure of Eureka's annexation efforts to conform to the newly amended annexation statute with its additional requirements; (2) the denial of St. Louis County's post-trial motion to re-open the case for additional evidence; (3) the absence of evidence that the annexation was necessary to the proper development of Eureka; (4) the failure of Eureka to demonstrate its ability to furnish municipal services to the annexed area within a rea-

sonable time after the effective date of the annexation; and (5) the absence of substantial evidence to show the annexation was reasonable and necessary, as to be fairly debatable before Eureka's Board of Aldermen.

■ County's first point argues that Eureka must comply with the host of procedural requirements contained in Section 71.015, as amended in 1980, which imposed more stringent requirements for annexation. For example, subsection (1) requires that at least 15% of the perimeter of the area to be annexed be contiguous with the city's existing boundary. Subsection (2) requires development of a "Plan of Intent" to provide services to the annex area and a public hearing, and places a limit on the future effective date of the annexation. Subsection (3) requires good faith effort to notify all the owners of record and residents in the area proposed to be annexed. Subsection (4) requires presentation at a public hearing of the "Plan of Intent" with supporting evidence bearing on major services presently provided by the city, a proposed time schedule for providing such services to residents in the annex area within three years, and information as to city assessment, tax rates and how the city proposes to zone the annex area. Subsection (5) requires a declaratory judgment action by the city, following the hearing, if the city council adopts an ordinance to annex. One of the requirements of the petition is that it state facts showing the ability of the city to provide municipal services to the annex area within three years after the annexation becomes effective. Subsection (6) deals with the election procedures. Subsection (7) provides that failure to provide municipal services within the three year period will permit an action to be brought for deannexation. Subsection (8) exempts any city which has filed a declaratory judgment action prior to May 13, 1980, from compliance with subsection (5). Subsection (5) as noted relates to the declaratory judgment action which must be filed.

Eureka admits it did not meet the requirements set forth in Section 71.015 as amended in 1980, but argues that before the effective date of May 13, 1980, the annexation had already proceeded through all the legislative steps, gaining approval by the voters of both the annex and annexing area in August 1979. The suit for declaratory judgment was filed in September 1979, more than eight months before the effective May 1980 date for the amendment to Section 71.015. We agree with the trial court's conclusion that *City of Branson v. Biedenstein,* 618 S.W.2d 665 (Mo. banc 1981) is dispositive of this point. In *City of Branson,* our Supreme Court stated:

> In order to comply with subsection (5), the city must be in a position to satisfy the requirements of the preceding subsections (1) through (4), mentioned above. Being relieved, however, by subsection (8) from compliance with subsection (5), it would follow that respondent would not be expected to comply with subsections (1) through (4), either. The legislature's common sense approach is evident. It would be impossible for a city ... which had proceeded in good faith under the old § 71.015 to comply with the new requirements contained in subsections (1) through (5) without starting completely anew. It is clear that the legislature intended to relieve cities which had already commenced annexation proceedings from complying with subsection (1) through (4), as well as subsection (5), of the amendment. Subsection (7), which creates a cause of action for deannexation where the municipal services have not been provided within three years, likewise was not intended to apply to a city which, as here, was not required at the time it commenced annexation proceedings to furnish municipal services within three years of the effective date of annexation. *Id.* 670–71[6].

*City of Branson,* while holding that the amendments to Section 71.015, effective May 1980, were procedural, noted the amendments contain an exemption to relieve certain annexation efforts from compliance therewith. *Id.* We reject County's

characterization that these comments are merely gratuitous. *City of Kirkwood v. Allen*, 399 S.W.2d 30 (Mo. banc 1966), upon which the County relies is readily distinguishable. *City of Kirkwood* dealt with a 1963 amendment to Section 71.015 RSMo 1959 requiring a vote in both the city and the area to be annexed in first class charter counties before a declaratory judgment was filed. The City of Kirkwood had completed only the preliminary legislative step of annexation by its passage of a resolution of its intent to annex certain land. The court held that the amendment providing for the dual election was procedural and applied to the previously filed annexation suit. Otherwise, the critical step affording residents of the annex area the right to vote on the annexation would not be met. That is not the situation before us, since the dual election was held as required by Section 71.015(6). Point denied.

■■■ County's second point urges that we find the denial of its motion to vacate the judgment and reopen the cause for additional evidence erroneous. County claims evidence after the trial that Lester Baird, Eureka's city administrator who testified extensively for Eureka at trial, had resigned was material and would have probably produced a different result in the trial court's decision because of the importance of the role played by the city administrator. Generally, motions for new trial on the basis of newly discovered evidence are addressed to the sound discretion of the trial judge, and are viewed with disfavor and are granted only in exceptional circumstances. *Sulltrop v. Sulltrop*, 655 S.W.2d 850, 851[3] (Mo.App.1983). The motion must show: (1) the evidence has only recently come to County's knowledge; (2) due diligence would not have uncovered the evidence sooner; (3) the new evidence is so material it would probably produce a different result; (4) the new evidence is not cumulative; and (5) the object of the evidence is not to impeach the character or credit of a witness. *Id.* at 851–52[4]. Further, a motion for new trial on the basis of newly discovered evidence must be supported by some proof, either within the motion itself or by accompanying affidavits. *Vanderson v. Vanderson*, 668 S.W.2d 167, 172[16] (Mo.App.1984).

■■ The trial judge correctly denied County's motion. In its motion County stated that Lester Baird, Eureka's city administrator, left his employment with Eureka, but failed to show that the evidence had only recently come to its knowledge. No mention was made when Baird's employment was terminated or when the County discovered this fact. The motion stated that misfeasance by Baird in his job performance prompted the termination of his employment. The motion further stated Baird's termination "calls into question Eureka's ability to provide municipal services within a reasonable time" to the annex area, "as well as the credibility of the evidence put forth on behalf of Eureka." The motion had no supporting affidavits.

Nothing in the motion suggests that the removal of Eureka's city administrator would have produced a different result by the trial court. The County's position that the elimination of the city manager "calls into question Eureka's ability to provide municipal services" sidesteps the requirement that the County show the city administrator's absence was so material as to produce a different result. Furthermore, the motion's allegation that Baird's termination undermines "the credibility of the evidence put forth on behalf of Eureka" and the allegation of Baird's misfeasance intimate that the object of the evidence is to impeach or discredit Baird, which would be contrary to *Sulltrop's* fifth requirement. Nothing in the motion indicates the termination of this city employee is so material that the City of Eureka's municipal services will be discontinued. The motion is not supported by proof, within the motion itself or by accompanying affidavits. Point denied.

■■■ County's final three points essentially question whether the evidence is sufficient to show the annexation was reasonable and necessary as to be fairly debatable by the Board of Aldermen of the City of

Eureka. When reviewing the propriety of a decision by a legislative body, the appellate court determines whether there is substantial evidence to support the legislative decision. *City of Town & Country v. St. Louis County*, 657 S.W.2d 598, 605 (Mo. banc 1983). Thus, in reviewing a city's legislative decision to annex if there is substantial evidence to show that annexation was reasonable and necessary, then the issue was at least debatable and the legislative action must stand. *Id.* "The so called 'debatable' rule merely means that if there is substantial evidence both ways [on the issue of annexation], then the legislative conclusion is determinative." *Binger v. City of Independence*, 588 S.W.2d 481, 485 (Mo. banc 1979). (quoting *City of Olivette v. Graeler*, 369 S.W.2d 85, 96 (Mo.1963)).

■ We are not concerned with weighing the interests of St. Louis County on the issue of the annexation. The rule in *City of Olivette v. Graeler*, 369 S.W.2d 85 (Mo. 1963), that the reviewing court must consider the interest of the county as a whole in determining the reasonableness of a proposed intra-county annexation was overruled in *City of Town & Country*, 657 S.W.2d at 605–06. In *Town & Country*, the Missouri Supreme Court stated that the legislature, by giving all the affected residents the right to vote on the proposed annexation, permitted the interests of the county to be considered in the first instance by residents of the affected areas as part of the totality of the circumstances and consequences inherent in the choice of governmental auspices. 657 S.W.2d at 605. Therefore, County's point four which states Eureka failed to present convincing or substantial evidence that it could provide municipal services to the annex area or that the needs of the inhabitants of the annex area are not already cared for by the County and that they should therefore be supplanted by Eureka is without merit. By their vote, the residents of Eureka and the annex area weighed the relative interests, benefits, and disadvantages of the County against those of Eureka in the choice of government offered them and indicated their preference. We must examine only whether there was substantial evidence that the annexation was reasonable and necessary so that the issue of annexation was fairly debatable, issues raised in County's points three and five.

Although not exhaustive or exclusive, *City of Perryville v. Brewer*, 557 S.W.2d 457, 462 (Mo.App.1977), sets forth several criteria which may be weighed and considered by a court before arriving at a decision on the reasonableness and necessity of a proposed annexation:

(1) there must be a need for residential or industrial sites within the proposed area;

(2) the city is unable to meet its needs without expansion;

(3) only needs which are reasonably foreseeable and not visionary should be considered;

(4) past growth may be relied on to show the future necessity;

(5) in evaluating future needs, the extent to which past growth has caused the city to spill over into the proposed area should be considered;

(6) the beneficial effect of uniform application and enforcement of municipal zoning ordinances in the city and in the annexed area may be considered;

(7) also to be considered is the need for or the beneficial effect of uniform application and enforcement of municipal building, plumbing and electrical codes;

(8) the need for or the beneficial effect of extending police protection to the annexed area;

(9) the need for or the beneficial effect of uniform application and enforcement of municipal ordinances or regulations pertaining to health;

(10) the need for and the ability of the city to extend essential municipal services into the annexed area;

(11) enhancement in value by reason of adaptability of the land proposed to be annexed for prospective city uses; and

(12) regularity of boundaries.

It is not necessary that all of the factors which have been listed above be considered

in determining the question of reasonableness. *Id.* We capsulize the facts from the record on appeal essential to our determination.

Eureka is located in the southwest portion of St. Louis County, twelve miles west of Interstate 270. While connected by Interstate 44 to the major metropolitan area, Eureka is isolated from urbanization by a huge expanse of public and institutional land surrounding it. To the east of Eureka are situated approximately 6200 acres including Beaumont Reservation, Castlewood State Park, Lone Elk Park, Mini-Bike Park, Washington University Research Area and West Tyson Park. Another 5300 acres of public and institutional land including Greensfelder Park, LaSalle Institute, Rockwood Range and Reservation, and Society of Mary act as a green belt from north of Eureka to the more urbanized area of St. Louis County. The Meramec Hills region encompassing Eureka and its environs contains the most rugged topography in the county with outcropping rocks on the hilly terrain. Thirty-two percent of Eureka is situated in the flood plain of the Meramec River and twenty-three percent is in steep slopes. Only forty-five percent of the city remains buildable according to its experts. Only two percent of the annex area lies in the flood plain and twenty-two percent in steep slopes, with seventy-four percent of this area buildable. The geographic isolation of Eureka from the more urbanized areas of St. Louis County has also spurred its independent development of water, sewer, road maintenance, police protection and other services for its residents. Laclede Gas Company, the Metropolitan Sewer District, and St. Louis County Water Company presently provide no services to Eureka or the annex area.

Eureka was originally incorporated in 1954 and had a population of 951 persons within its area comprising 2.61 square miles. Eureka has perfected a series of annexations resulting in an increase of its original area to 6.72 square miles. Its population quadrupled between the incorporation in 1954 to 3,862 persons according to the 1980 U.S. Census. The addition of 1,243 acres of the annex area would increase the size of Eureka to approximately 5,541 acres.

A mayor and board of aldermen govern Eureka. The city is divided into three wards, each having two aldermen. Eureka has a planning and zoning commission, a board of adjustment, a police and fire department, industrial development authority, city attorney, city engineer, and a public works department which contains the street, water, and park departments. Eureka has zoning and subdivision ordinances which it administers throughout the city. The city has adopted the 1978 BOCA Basic Building Code, Family Dwelling Code, BOCA Basic Mechanical Code, and BOCA Basic Industrialized Dwelling Code. Eureka has adopted external appearance, plumbing, electrical and explosive codes, sign regulations, and regulations for a cable television system franchise. Eureka's electrical and explosives inspections are contracted for through St. Louis County.

Eureka's public works department consists of the street, water, sewer, and park departments. Eureka provides road maintenance for approximately twenty miles of roads. Its roads have been improved so that over 95% are now permanently paved. Eureka has a road maintenance garage, a material shelter, a vehicle shelter, and an assorted complement of road equipment enabling the city to provide snow removal, street cleaning, and street signing and striping for the benefit of its residents. Approximately 2.18 miles of St. Louis County maintained roads would go to the City of Eureka upon annexation. The only roads in Eureka maintained by the State Highway Department are Highway 109 and Interstate 44.

The park department oversees the maintenance of the four parks (Ruprecht Memorial, Lion's, Drewel Memorial, and Hilltop) comprising Eureka's park system.

Eureka provides water and sewer services to most homes and businesses within its municipal boundaries. The municipal sewerage treatment plant, newly constructed

in 1972 and subsequently improved to increase its capacity, also enables Eureka to provide service to Six Flags, the Ramada Inn, and others in the annex area with a sufficient reserve capacity to accommodate future growth in both the city and the annex area. Water for both Eureka and the annex area is drawn from four deep wells. The city's water supply is plentiful with a present production capacity adequate for a populace of 17,000. Eureka and the annex area share a strip of commercial development along the Interstate 44 corridor.

The Eureka Police Department has ten full-time law enforcement officers providing twenty-four hour service with three patrol vehicles at its disposal. The police station is located adjacent to the City Hall within two miles of any point in the city. The closest precinct station in the annex area serviced by the St. Louis County Police is in Ballwin, some thirteen miles away.

Both Eureka and the annex area are served by the Eureka Fire Protection District with manpower of eight paid employees and forty-one volunteers. The low insurance rating on the quality of fire protection services offered is attributed to the vast area of seventy-nine square miles which the fire district encompasses.

St. Louis County provides by contract a broad range of health services through its Department of Community Health and Medical Care for both the incorporated area of Eureka and the annex area. The services include inspectors for food services, swimming pools, sewerage treatment, and water facilities, as well as control services for milk, animals (rabies), and noise and air pollution.

■ In its brief the County states that 16.7% of Eureka's land is undeveloped and complains the trial court made no finding concerning the amount of land capable of development in Eureka. The County takes the broad stance that without Eureka's showing that the annex area is needed for expansion in the sense of land available for development, annexation must fail. A city is not foreclosed from annexing adjacent territory simply because undeveloped tracts remain within its present boundaries or because its citizens do not choose to build within certain of its areas. *City of Cameron v. Stafford,* 466 S.W.2d 115[6] (Mo.App.1971). There is no requirement that a city utilize all vacant land before it is able to extend its city limits. *City of O'Fallon v. Bethman,* 569 S.W.2d 295, 303 (Mo.App.1978). Eureka does not claim the annexation is intended to correct a lack of vacant land in its bounds. Eureka argued its need to offer prospective industrial users a choice of desirable land to develop. The County's emphasis that Eureka still has vacant industrial acreage does not render Eureka's argument meritless. Vacant land in a city, whether industrial, commercial or residential, can vary greatly in its desirability to attract development. A decreasing amount of suitable land may underlie the slowdown in the rate of increase in Eureka's population. The annex area here is adjacent to or contiguous with the city's boundaries. Its addition does not distort Eureka's boundaries into an odd configuration. Eureka already provides water and sewer service to portions of the annex area. The demand for public services provided by Eureka is growing, both within and beyond the present corporate limits. The financial condition of Eureka appears sound and annexation will not weaken, but more likely strengthen, that aspect. The opportunity for the area to develop as one cohesive entity rather than a patchwork of subdivisions has been shown. While much of Eureka's area is undeveloped as is the annex area, Eureka is in an optimum position to serve as a hub for the orderly development of the growth currently underway in its immediate vicinity rather than into several unconnected areas with problems in providing or obtaining municipal services. The community of interest shared by Eureka with the annex area which the trial court found accurately characterizes testimony presented at trial.

■ Here, the evidence is certainly sufficient to show that Eureka is capable of and can, within a reasonable time as needed,

provide police, water, sewer, street, and like municipal services. On the basis of all the foregoing, we conclude that the trial court correctly found that the City of Eureka has shown that the propriety and necessity of annexation is fairly debatable and, as such, we shall not disturb the legislative decision of the Board of Aldermen of the City of Eureka.

Judgment affirmed.

STEWART and STEPHAN, JJ., concur.