**CITY OF ST. PETERS, Missouri, Appellant,**

v.

**RONALD A. WINTERHOFF LIVING TRUST, et al., Respondents.**

**No. ED 79579.**

Missouri Court of Appeals, Eastern District, Division Three.

May 21, 2002.

David T. Hamilton, Hazelwood & Weber LLC, St. Charles, MO, for Appellant.

James A. Borchers, Stuhler & Borchers, P.C., St. Charles, MO, for Respondent.

PAUL J. SIMON, Judge.

The City of St. Peters (City) appeals the judgment of the Circuit Court of the County of St. Charles denying City's action seeking a declaratory judgment in favor of its proposed annexation of unincorporated territory (territory) located near Highway 94 in St. Charles County, Missouri. On appeal, City contends that the trial court erred because: (1) it applied an improper standard of review when it found that the burden of proof was on City to plead and prove that its proposed annexation was reasonable and that it was necessary to proper development of City, and failed to apply the applicable "fairly debatable standard;" and (2) City complied with all re-

quirements of Section 71.015 RSMo (2000) (all further references herein shall be to RSMo 2000 unless otherwise noted) applicable to the annexation and submitted substantial evidence supporting multiple factors to establish the reasonableness and necessity of the proposed annexation. Finally, City argues that "the trial court erred in refusing to grant declaratory judgment in favor of City because City presented substantial evidence showing that the reasonableness and necessity of the annexation was at least fairly debatable" and "[defendants] failed to establish that [City's] exercise of legislative powers was arbitrary and clearly unreasonable." We reverse and remand.

City is a municipal corporation of the fourth class located in the County of St. Charles, a first class constitutional charter county. Defendants are owners (and class representatives of owners) of real property in the territory. The territory is comprised of undeveloped tracts and property zoned industrial or commercial.

Following its decision to annex the territory, City held hearings, drafted a plan of intent, passed an ordinance, and filed a declaratory judgment action requesting that the trial court enter judgment declaring that City met all the requirements of the law to annex the territory, thus permitting City to proceed with an annexation election pursuant to section 71.015.

City filed a "Motion for Findings of Fact, Conclusions of Law and Judgment," and, on December 14, 2000, defendants filed their answer to City's First Amended Petition, denying that the proposed annexation was reasonable and necessary to the proper development of City.

On February 13, 2001, City filed a Response to Defendants' Post Trial Brief (Defendants' Post Trial Brief does not appear in the record), in which City argued, in pertinent part, that the appropriate standard of review for a city's decision to annex land was whether there was substantial evidence showing that the reasonableness and necessity of the annexation was, at least, fairly debatable.

Following trial on City's declaratory judgment action, the trial court issued its Findings of Fact, Conclusions of Law and Judgment, in which it found: (1) City's Petition complied in all respects with the standards of section 71.015.1(5); (2) under section 71.015 the "burden is upon the annexing city to plead and prove that its proposed annexation is 'reasonable' and that it is 'necessary to the proper development of the city;'" (3) the term "reasonable," as used in section 71.015, "doesn't mean reasonable just from the city's point of view but reasonable in its impact on the annexation area," and "both parties are entitled to the test of reasonableness [footnote omitted];" (4) City could not justify the proposed annexation "on any need for additional industrial sites;" (5) City was able to meet its needs without the territory; (6) City had grown because it was "in the path of growth[,] not because of 'foreseeable' needs to expand" and City was not forced to annex the territory so that its growth could " 'spill over,' since the annexation area [was] largely developed;" (7) the territory would not benefit from "any application or enforcement of [City's] zoning or building codes since St. Charles County has virtually identical codes which are already uniformly applied and enforced;" (8) the territory had "no need for police protection from [City] [footnote omitted];" (9) the territory had "no need" for "any additional 'health' related regulation;" (10) St. Charles County and independent agencies were furnishing the territory with "all normal municipal services" and the territory had "no need for services from [City] and City [would] therefore not provide any new essential municipal ser-

vices to the annexation area [footnote omitted];" (11) there was "no enhancement in value by reason of adaptability of the annexation area for prospective city purposes [footnote omitted];" and (12) the proposed annexation "could not be justified 'on rounding out' [City's] boundaries, not only because it [would] have no significant geographical 'rounding' effect, but because [City's] boundaries show disregard for any such rounding." The trial court concluded: "[City] has failed to meet its burden of proving that the proposed annexation is reasonable (for both [City] and the annexation area). [City] may not, therefore, proceed to annex the lands described in its Amended Petition." The footnote to the trial court's finding that both parties were "entitled to the test of reasonableness" refers to *Olivette v. Graeler*, 338 S.W.2d 827 (Mo.1960), (*Graeler I*), as authority. City appeals.

We find City's first point dispositive in which it contends that the trial court erred in that it failed to apply the applicable "fairly debatable" standard of review, as evidenced by its finding that the "burden [of proof] is upon the annexing city to plead and prove that its proposed annexation is 'reasonable' and that it is 'necessary to the proper development of the city.' "

Section 71.015, known as the Sawyer's Act, governs specified annexations and provides, in pertinent part:

1. Should any city, town, or village, not located in any county of the first classification which has adopted a constitutional charter for its own local government, seek to annex an area to which objection is made, the following shall be satisfied:

   ❋      ❋      ❋

(2) The governing body of any city, town, or village shall propose an ordinance setting forth the following:

   ❋      ❋      ❋

(b) That such annexation is reasonable and necessary to the proper development of the city, town, or village . . .

   ❋      ❋      ❋

(5) Following the hearing, and either before or after the election held in subdivision (6) of this subsection, should the governing body of the city, town, or village vote favorably by ordinance to annex the area, the governing body of the city, town or village shall file an action in the circuit court of the county in which such unincorporated area is situated, under the provisions of chapter 527, RSMo, praying for a declaratory judgment authorizing such annexation. The petition in such action shall state facts showing:

   ❋      ❋      ❋

(b) That such annexation is reasonable and necessary to the proper development of the city, town, or village . . .

   ❋      ❋      ❋

3.

   ❋      ❋      ❋

(2) In the case of a proposed annexation of unincorporated territory in which no qualified electors reside, if at least a majority of the qualified electors voting on the proposition are in favor of the annexation, the city, town or village may proceed to annex the territory and no subsequent election shall be required.

■ The trial court found that, under section 71.015, the "burden is upon the annexing city to plead and prove that its proposed annexation is 'reasonable' and

that it is 'necessary to the proper development of the city.'" In *Binger v. City of Independence*, 588 S.W.2d 481, 485 (Mo. banc 1979), plaintiffs, as representatives of a class of objecting property owners, argued that the city carried "a burden of persuasion that the preponderance of the evidence establishes reasonableness and necessity or the absence thereof." Our Supreme Court responded:

Actually, that is not what the term burden of proof means in these cases. This necessarily is true because the outcome of these cases does not depend on whether a city establishes by a preponderance of the evidence that annexation is reasonable and necessary or that citizens establish by a preponderance of the evidence that such annexance is unreasonable and unnecessary. *There is not in these cases a burden of persuasion by a preponderance of evidence. Instead, the test is whether the evidence shows that the question of reasonableness and necessity of the annexation was fairly debatable. If it does, the legislative decision must stand.* Therefore, when the suits to test reasonableness and necessity (both the Sawyers Act and the pre-Sawyers Act cases) speak of the burden of proof, they necessarily refer to a burden of proceeding with the evidence. The earlier cases have not analyzed the term burden of proof and have not articulated the fact that it really means the burden of proceeding with the evidence, but, as pointed out above, this necessarily is so and it henceforth should be so interpreted.

*Id.* [Emphasis added.]

Similarly, in *City of Town & Country v. St. Louis County*, 657 S.W.2d 598, 605 (Mo. banc 1983), our Supreme Court ruled in favor of annexation, finding that because substantial evidence showed that the city's decision to annex was reasonable and nec-

essary, the issue of annexation was fairly debatable. Our Supreme Court has made it clear that, in an action pursuant to section 71.015, a city does not carry a burden of "proving" nor even "persuading" a trial court that a proposed annexation is, in fact, reasonable and necessary. To the contrary, a city need only demonstrate that substantial evidence exists which indicates that its legislative decision to annex was reasonable and necessary, therefore rendering the annexation issue fairly debatable. *Id.*

Further, the trial court's reliance on *Graeler I* in support of its findings that both parties were "entitled to the test of reasonableness" and that the term "reasonable," as used in the statute, meant reasonable from City's as well as the territory's points of view, is misplaced. Although our Supreme Court in *Graeler I* held that both the city and the territory sought to be annexed were entitled to the "test of reasonableness" under section 71.015 RSMo (1949), it subsequently revisited *Graeler I* and *City of Olivette v. Graeler*, 369 S.W.2d 85 (Mo.1963) (*Graeler II*) in *Town & Country*, 657 S.W.2d at 605, stating:

At the time the *Graeler* cases were decided, residents of unincorporated areas sought to be annexed had no voice in the annexation process. It fell to the judiciary to safeguard the interests of the "community" of residents of unincorporated county areas through its scrutiny of proposed annexations. Since that time, however, the legislature has acted to give affected residents a determinative voice in the annexation process.

*Id.*

The Court then addressed the changes in sections 71.015 and 71.870, which provide residents of affected areas the opportunity to vote in favor of or in opposition to proposed annexations. *Id.* Absent approv-

al by the voters in both the unincorporated areas and the city, the city could not perfect its proposed annexation. *Id.* The Court concluded:

> To the extent that the statutes do not explicitly address the interests of the County government vis-à-vis other governmental entities in annexation cases, the previous discussion makes clear that the legislature's actions modify judicial concern for such interests. Those interests are now permitted to be considered in the first instance by residents of affected areas as part of the totality of circumstances and consequences mentioned above with resultant relief to the courts of that much of their burden. To the extent that the *Graeler* cases hold otherwise, they are overruled.
>
> *Id.* at 606.

This language, coupled with the Court's holding that if the trial court determines that there is "substantial evidence" supporting a city's legislative decision to annex, then the issue "[is] at least debatable and the legislative action must be permitted to stand," indicates that the Court abandoned the *Graeler* approach insofar as it held that both parties were entitled to the "test of reasonableness."

■ Therefore, the trial court's conclusions that City failed to meet its "burden of proving" that the proposed annexation was reasonable and necessary for both City and the annexation area and that both parties were "entitled to the test of reasonableness" are erroneous.

In its second point, City contends that it complied with all of the requirements of section 71.015 applicable to the annexation and submitted substantial evidence supporting multiple factors to establish the reasonableness and necessity of the proposed annexation. In its third point, City argues that it presented substantial evidence showing that the reasonableness and

necessity of the annexation was "at least fairly debatable." The trial court found that City's Petition complied in all respects with the standards of section 71.015.1(5). Since we have found in our disposition of City's first point that the trial court erroneously declared and applied the law, we will not address City's second and third points but will remand the case for further proceedings in accordance with this opinion.

Judgment reversed and remanded.

CLIFFORD H. AHRENS, P.J. and MARY R. RUSSELL, J., concur.