**CITY OF ST. PETERS, Respondent,**

v.

**RONALD A. WINTERHOFF LIVING TRUST, et al., Appellants.**

No. ED 82115.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 23, 2003.

James A. Borchers, St. Charles, MO, for appellants.

David T. Hamilton, St. Charles, MO, for respondent.

GLENN A. NORTON, Presiding Judge.

## OPINION

Property owners in an unincorporated territory of St. Charles County appeal the declaratory judgment approving the proposed annexation of the territory by the City of St. Peters. We affirm.

## I. BACKGROUND

The appellants own property in an unincorporated territory of St. Charles County, contiguous with the City of St. Peters, along the southern edge of Highway 94. The territory is comprised of property zoned for commercial or industrial use, some of which is already developed. The City decided it wanted to annex the territory. As required by section 71.015 RSMo 2000, the City held hearings on its proposal, drafted a plan of intent, passed an ordinance and filed a petition asking the court to declare that the City had met all the statutory requirements and could proceed with annexation.

After a bench trial, the court concluded that the City had failed to prove the proposed annexation was reasonable and necessary to the proper development of the City and that both parties were entitled to a test of reasonableness. On appeal, this Court found these conclusions erroneous. *City of St. Peters v. Ronald A. Winterhoff Living Trust, et al.,* 77 S.W.3d 17, 21 (Mo.App. E.D.2002) (*"Winterhoff I"*). First, we held that the City needed only to *produce* substantial evidence to indicate that its legislative decision to annex was reasonable and necessary, therefore rendering the annexation issue fairly debatable; there is no burden to *prove* that annexation is in fact reasonable and necessary. *Id.* at 20. Second, we recognized that the Supreme Court had overruled the requirement that both parties are entitled to a test of reasonableness because residents of areas to be annexed are now given the power to vote on annexation and, therefore, no longer need the judiciary to protect their interests. *Id.* (citing *City of Town & Country v. St. Louis County,* 657 S.W.2d 598, 606 (Mo. banc 1983), which overruled, in part, *City of Olivette v. Graeler,* 338 S.W.2d 827 (Mo. 1960) and *City of Olivette v. Graeler,* 369 S.W.2d 85 (Mo.1963)).[1] The case was remanded for further proceedings consistent with the opinion. *Winterhoff I,* 77 S.W.3d at 21. On remand, the court entered

---

1. In the argument section of their brief, the property owners contend that the *Graeler* cases are still applicable to them because they are industrial and commercial property owners with no right to vote, unlike residents. First, this error was not included in their point relied on, which violates Rule 84.04(e). Moreover, our earlier decision in *Winterhoff I* is the law of this case, and nothing persuades us to depart from the general rule that it governs the issues on this appeal and requires us to consider reasonableness only from the City's perspective. The issue of applicable standards was raised in the first appeal, and the more specific issue regarding these property owners' inability to vote could have been. *See Williams v. Kimes,* 25 S.W.3d 150, 154 (Mo. banc 2000). The opinion in *Winterhoff I* did not arise from a mistake or result in a manifest injustice, and there has been no in-

tervening change in the law or the evidence. *Id.* Moreover, *Winterhoff I* was not "palpably wrong." *Gulmen v. Gulmen,* 913 S.W.2d 852, 856 (Mo.App. E.D.1995). In fact, in *City of Town & Country* the Court held that a business in the annexed area was not denied due process because it could not vote, where the business was a party to the declaratory judgment action challenging annexation, had an opportunity to adduce evidence and address issues raised in that action and had an opportunity to inform voters in the affected area of its position against annexation. 657 S.W.2d at 608; *see also City of St. Peters v. Shop N' Save Warehouse Foods, Inc.,* 710 S.W.2d 409, 416 n. 3 (Mo.App. E.D.1986) (proposed annexation not improper just because there were no resident voters, where business had opportunity to present evidence and address issues).

judgment finding that the City complied with the procedural requirements of section 71.015 and produced substantial evidence to establish that the reasonableness and necessity of annexation was at least fairly debatable. The court also found that the territory has no eligible voters and that annexation is, therefore, a foregone conclusion; but these were not grounds to deny the petition because the industrial property owners had an opportunity to adduce evidence and address issues raised by annexation. The property owners appeal.

## II. DISCUSSION

The property owners contend that the City did not present substantial evidence sufficient to show that annexation should be permitted. When reviewing a legislative decision to annex, this Court determines whether there is substantial evidence to show that the reasonableness and necessity of the annexation are fairly debatable. *City of Town and Country,* 657 S.W.2d at 605; *see also City of Eureka v. Hall,* 687 S.W.2d 917, 921 (Mo.App. E.D.1985). Neither the trial court nor this Court may substitute its judgment or discretion for that of a city's legislative body. *City of Parkville v. Northern Farms,* 950 S.W.2d 882, 885 (Mo.App. W.D.1997). Thus, our inquiry is limited to whether the City's decision was arbitrary and completely unreasonable. *Id.*

The City had the burden of producing evidence demonstrating that its legislative decision was reasonable and necessary. *Winterhoff I,* 77 S.W.3d at 20. Under the "fairly debatable" standard, if there is substantial evidence both ways on the issue of annexation, then the legislative conclusion is determinative. *City of Eureka,* 687 S.W.2d at 921 (citing *Binger v. City of Independence,* 588 S.W.2d 481, 485 (Mo. banc 1979)). There are no fixed rules, and each case must be decided upon its own set of unique facts. *City of Park-*

*ville,* 950 S.W.2d at 885. For guidance, our Court has set forth criteria that may be weighed and considered by a court in making a determination of reasonableness and necessity:

(1) the city's need for residential or industrial sites within the annexed area;

(2) the city's inability to meet its needs without expansion;

(3) needs that are reasonably foreseeable versus not visionary;

(4) past growth showing future necessity;

(5) extent to which past growth has caused the city to spill over into the annexed area;

(6) the beneficial effect of uniform application and enforcement of municipal zoning ordinances in the city and in the annexed area;

(7) the need for, or beneficial effect of, uniform application and enforcement of municipal building, plumbing and electrical codes;

(8) the need for, or beneficial effect of, extending police protection to the annexed area;

(9) the need for, or beneficial effect of, uniform application and enforcement of municipal ordinances or regulations pertaining to health;

(10) the city's need and ability to extend essential municipal services to the annexed area;

(11) enhancement in value by reason of adaptability of the land in the annexed area for prospective city uses; and

(12) regularity of boundaries.

*City of Eureka,* 687 S.W.2d at 921. These factors are not exclusive or exhaustive, and we need not consider all of them. *Id.* at 921–22. Again, we are not concerned with weighing the interests of the annexed area or the county in which it sits. *Winterhoff*

*I,* 77 S.W.3d at 21; *see also City of Eureka,* 687 S.W.2d at 921; *City of Ballwin v. Hardcastle,* 765 S.W.2d 324, 328 (Mo.App. E.D.1989).

▇ Here, there was substantial evidence that the City has a need for property zoned industrial along the Highway 94 corridor—a need it is unable to meet without expansion. While the City already has property zoned and planned for future industrial development within its city limits, the City's planning director testified that its marketability is different than that of the property along Highway 94, geographically and in terms of desired uses. The City's current industrial property is also inadequate for a city of its size, and the City would like to improve local job opportunities by attracting more industry. Moreover, development of the existing industrial property in the City is dependent on construction of a levee that has not yet begun. In any event, the City is not precluded from annexing certain property simply because it has similar vacant property within its present boundaries. *See, e.g., City of Eureka,* 687 S.W.2d at 923.

There was also substantial evidence that the City has a need for and would benefit from extending its police service to the territory. The City's police chief testified to frequent confusion—by people calling the police and by officers responding to calls—regarding the City's limits in the area along the Highway 94 corridor. Annexation would clarify that confusion and allow the police department to provide more consistent protection in that area.

It is undisputed that water, sanitation, ambulance service, library services and fire protection for the territory are currently provided by private entities, and those services would not change after annexation. But the City would extend several other services not currently offered in the territory, including animal control, mosquito prevention, noise pollution control, recreation facilities with meeting space, street maintenance, certain trash removal services and an organic material compost facility. Similarly, the City demonstrated that it has a need for and would benefit from more uniform interpretation, application and enforcement of building, plumbing, electrical and zoning codes. Currently, the City and the territory are governed by similar codes, although the City uses some older editions of the same national code. Variations in the editions and in the discretion exercised by those enforcing the codes can result in different interpretations. Moreover, current techniques for enforcing the codes differ: the City performs annual inspections, whereas, St. Charles County performs some routine inspections in certain areas, but otherwise takes a reactive approach to enforcement of its codes. The City's planning director testified that annexation would benefit the City's ability to uniformly enforce its building codes and maintain a consistent appearance along the Highway 94 corridor.

Finally, the City's director of planning testified that annexation would standardize or "even out" the City's boundary along Highway 94, thereby simplifying municipal services in that area.

Based on the foregoing, the City's legislative decision was not arbitrary or completely unreasonable. The trial court correctly found that the City has shown that the reasonableness and necessity of annexation are fairly debatable.

Point denied.

### III.  CONCLUSION

The judgment is affirmed.

KATHIANNE KNAUP CRANE, J., and MARY K. HOFF, J., concurring.