786

CITY OF CAPE GIRARDEAU, a Municipal Corporation, Appellant,

v.

John E. FRANK and Louise M. Frank, et al., Respondents.

CITY OF CAPE GIRARDEAU, a Municipal Corporation, Appellant,

v.

Jesse C. RUTHERFORD, et al., Respondents.

Nos. 42427, 42428.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 4, 1982.

Stephen Limbaugh, Robert Fick, City Atty., Cape Girardeau, for appellant.

William Rader, R. Howard Dillard, Cape Girardeau, Kenneth Waldron, Jackson, James R. Robison, Sikeston, for respondents.

PUDLOWSKI, Judge.

The City of Cape Girardeau instituted two declaratory judgment actions pursuant to § 71.015 RSMo (1969) (commonly referred to as the Sawyers Act), to annex two unincorporated tracts of land in Cape Girardeau County. The two actions were consolidated for joint hearing but separate determination. The trial court entered judgment against the City on both cases. The City appeals both judgments. On appeal the cases were consolidated for the purpose of argument, but are separate for determination.

■ Our court in *City of Flat River v. Counts*, 596 S.W.2d 446 (Mo. App. 1979), stated that, "Our scope of review in this Sawyers Act case is to determine whether there is 'substantial evidence to show that the annexation was reasonable and necessary' to the City's development. *Binger v. City of Independence*, 588 S.W.2d 481 (Mo. banc 1979). In following this guidepost we look to a variety of factors with no single factor controlling and with the case being decided on the totality of its own facts. *City of Des Peres v. Stapleton*, 524 S.W.2d 203 (Mo. App. 1975)."

We follow that criteria and now consider the City's contentions. The City alleges that the trial court erred in both cases in finding that the annexations were not reasonable and necessary to the proper development of the City, and in finding that the City failed to show that it was able to furnish normal municipal services within a reasonable time to the areas sought to be annexed. The memorandum opinion of the trial court, however, suggests among the many reasons for denying the annexations that the primary basis for rendering judgment against the City is the lack of substantial evidence that the City can extend municipal services to the areas in question within a reasonable time.

■ As the City cites in its brief § 71.015 requires the municipality to present evidence of its ability to furnish normal municipal services. In the absence of such evidence, the proposed annexation must be rejected. *City of St. Ann v. Buschard*, 299 S.W.2d 546, 552 (Mo. App. 1957); *City of Butler v. Kuecker*, 559 S.W.2d 575, 580 (Mo. App. 1977). With respect to the level of services, the City must merely prove that it will be in a position within a reasonable time to furnish to the annexed area the same level of municipal services which it is currently furnishing to its existing populace. *City of Butler v. Kuecker, supra*. The purpose of our review of the municipal services question is clear. In essence we examine the legislative decision of the municipality to determine whether it is an arbitrary and oppressive exercise of legislative power. *Binger, supra*, at 484. The annexation of an unincorporated area without any investigation by the municipality of its ability to provide services is an arbitrary exercise of legislative power. Furthermore, the imposition of an increased tax burden upon residents of the annexed area without some assurance that municipal services will be forthcoming is clearly an oppressive exercise of legislative power.

■ Finally we note that § 71.015 provides that in the petition for declaratory judgment the municipality must *state facts*

*showing* "... the ability of the municipality to furnish normal municipal services ...." The municipality cannot state facts and cannot properly allege that it has the ability to provide municipal services within a reasonable time after annexation, unless it has previously determined its ability to provide such services and reached a decision based upon a thorough investigation that it possesses the ability. An annexation resolution asserting the present ability to furnish normal municipal services to the proposed area of annexation, which is not based upon any investigation or information, is an arbitrary exercise of legislative power. A petition for declaratory judgment based upon an arbitrary annexation resolution must be denied. Furthermore, an annexation resolution which is arbitrary at its inception cannot be cured after the petition for declaratory judgment is filed. Prior to 1953 the courts reviewed the validity of annexation proceedings only after they were consummated. The Sawyers Act changes this by giving the courts the power to test the annexation proceedings before the annexation itself is consummated. *Binger v. City of Independence, supra; City of St. Joseph v. Hankinson,* 312 S.W.2d 4, 9 (Mo. 1958). The purpose of the act is to permit the courts to review the legislative process which is already completed. *Binger v. City of Independence, supra.* It is axiomatic that a municipality cannot arbitrarily act in passing the annexation resolution and then expect the courts to condone such action on the basis of clever argument or other evidence manufactured after the petition is filed, and only for the purpose of passing muster under § 71.015. It is abundantly clear that the keystone of the legislative process in annexation is planning. Where the municipality fails to demonstrate that it has given some modicum of consideration to the mechanics and costs of extending services prior to filing the petition for declaratory judgment the annexation must fail.

With these principles in mind we proceed to consider the facts in the case at bar. Cape Girardeau is a city comprised of 13,340 acres. The total proposed annexation covers an area of 4,350 acres. It would increase its size by thirty-three percent. The tract of land which is the subject of *Cape Girardeau v. Rutherford,* is denominated tract A–1. It is located to the north and west of the city and covers an area of 3,300 acres. The tract of land which is the subject of *Cape Girardeau v. Frank,* is designated tract A–2. It is located south of the city, and covers an area of 1,050 acres.

The City of Cape Girardeau has a population of approximately 37,000. The population has steadily increased over the past thirty years, and there is every indication that it will continue to do so. As a result of this growth, land in the City limits is fairly well developed. The testimony indicates that there are approximately 1500 acres of vacant land suitable for development within the City. A renovation of an indeterminate area of the City is also underway. In recognition of these conditions the City investigated zoning and future annexation through two studies prepared by the Southeast Missouri Regional Planning Commission in 1974, and 1975. These studies suggested that there are areas adjacent to the City which are the natural areas for future growth and development. Both tracts A–1 and A–2 fall within the area of natural development. With these studies providing the impetus, the City proceeded to pass an annexation resolution on December 3, 1975, covering both tracts. The petition for declaratory judgment was filed the following day.

The evidence also indicates that the City is in need of some substantial capital improvements. At the time of trial a new jail house was completed, and a new fire house was under construction. The planning studies suggested substantial changes in the street system of the City to relieve future congestion. The most notable problem is the inadequate sewage collection system maintained by the City. There was substantial evidence that the sewage collection system is inoperative in some areas which results in raw sewage being diverted into an open creek. This creek runs through the heart of the City creating a substantial

health hazard. The evidence shows that this sewage problem arose many years before the annexation resolution was passed. Furthermore, the City apparently lacks the resources and the inclination to rectify the problem.

Tract A–1 is a predominately agricultural area. There are two small subdivisions in the tract. The evidence clearly reveals the fact that the City employees and officials who would be responsible for providing the municipal services in question did not conduct any investigation or present any factual data prior to the petition for declaratory judgment on their ability to provide services to tract A–1.

The fire chief testified to the response time from the appropriate fire station to tract A–1. He had no knowledge, however, of any plans or the cost of extending water mains and fire hydrants to the area. The sanitation and health officials testified that they made no investigation of the sewage problems in tract A–1 prior to the filing of the petition. In fact, they only investigated the sewage problems of tract A–1 a few weeks before the trial, and solely for the purpose of preparation for trial. These officials had no idea how the sewage collection system would be extended to tract A–1, how much it would cost, or how long it would take. The 1975 planning study clearly stated that the question of annexation turned upon the ability of the City to provide municipal services. This study did not investigate the financial cost or practical feasibility of extending services. The City did not investigate these questions either.

The preceding discussion applies with equal force to tract A–2. Tract A–2 is essentially a commercial-industrial development south of the City, but not adjacent to it. This area is separated from the City by an area within the flood plain of the Mississippi River. This flood area is not suitable for any development. Thus, a 1,000 foot in width corridor across the flood area is included in tract A–2, and extends from the corner edge of the southwestern border of the City to the industrial area further south. Again the evidence shows that the City did not consider the means, cost or time involved in extending services to tract A–2. In fact there was substantial testimony that the area between the City and the industrial development suffered from sand boils as a result of hydrostatic pressure. The hydrostatic pressure occurs when the Mississippi River is in flood stage. The pressure is manifested in sand boils, and the practical effect of this pressure is to force buried objects to the surface. Expert testimony established that sewer lines, water mains and other utilities buried in this area could suffer substantial damage whenever flooding occurs. Not only did the City fail to ascertain the feasibility of extending services to tract A–2, but the evidence indicates the impossibility of extending services in a conventional manner.

We recognize the fact that the City employees and officials testified that they could extend services within a reasonable time. These opinions, however, had no basis in fact or evidence upon the record. Without a firm evidentiary basis, these opinions have little value. *City of Flat River v. Counts, supra* at 449. We find from our exhaustive review of the transcript and exhibits that the City failed to produce substantial evidence to prove; a) the annexations were reasonable and necessary so that the issues cannot be considered fairly debatable and b) its ability to extend normal municipal services within a reasonable time to tracts A–1 and A–2. We conclude that the proposed annexations were arbitrary legislative acts and must be denied.

Judgments affirmed.

SMITH, P.J., and SATZ, J., concur.