Marie E. Fieser HOLDENER, Appellant,

v.

Glen E. FIESER, et al., Respondents.

No. 72794.

Missouri Court of Appeals,
Eastern District,
Division One.

July 28, 1998.

GARY M. GAERTNER, Judge.

Appellant, Marie Fieser Holdener ("plaintiff"), appeals the judgment entered by the Circuit Court of St. Louis County in favor of respondent, Glen E. Fieser, et al. ("defendant"),[1] denying plaintiff's petition for a declaratory judgment to revoke a family trust and for breach of contract regarding a deferred compensation plan. We reverse and remand.

Plaintiff married Leo H. Fieser, Sr., on November 17, 1933, and they remained husband and wife until Mr. Fieser's death on August 7, 1986. In the late 1940s, Mr. Fieser and plaintiff purchased and began operating a funeral home in south St. Louis County, Missouri. A few years later, they expanded the business to include a nursing home and operated the businesses as Fieser Services, Inc. Plaintiff worked in the business for approximately forty-five years, until approximately April 1995.

In February 1980, Mr. Fieser and plaintiff executed the Leo H. Fieser, Sr., and Marie E. Fieser Revocable Trust. Defendant, their son, was appointed trustee of the trust. On February 18, 1980, Mr. Fieser and plaintiff funded the trust by transferring jointly titled property ("the Lake Montowese Property") into it. This property was the only property in the trust. The trust was amended in May 1982 when the Fiesers executed the Leo H. Fieser, Sr., and Marie E. Fieser Revocable Trust Amended and Restated (hereinafter "Revocable Trust"). By its terms, Revocable Trust was established for the benefit of plaintiff and Mr. Fieser and could be revoked by either settlor, as to his or her shares contributed, by executing a written document to the trustee.

In December 1983, Fieser Services agreed by resolution of its Board of Directors to pay plaintiff deferred compensation in the sum of $1,200 per month for a period of fifteen years, beginning in January 1984 through December 31, 1998. The minutes of the Special Meeting of the Board of Directors reflect "[t]hese deferred compensation payments are made in recognition of [plaintiff's] long and devoted service to the corporation during

William A. Hellmich, Kurt A. Hentz, King, Koster, King, Hellmich & Hentz, LLC, St. Louis, for appellant.

Stuart Oelbaum, Nichols & Challis, Christine A. Gilsinan, St. Louis, for respondents.

1. Plaintiff's original suit was against defendant, his wife, plaintiff's daughter and Fieser Services. Plaintiff's appeal is only as to defendant, Glen Fieser.

which period she was not compensated for such services." Fieser Services made deferred compensation payments to plaintiff in varying amounts over the next twelve years but discontinued the payments in November 1995.

In 1986, construction began on a new home on the Lake Montowese Property. This construction was paid for entirely by plaintiff and Mr. Fieser. Upon its completion, defendant and his family moved into the residence and have used it as their personal residence since that time. Plaintiff paid for all repairs, maintenance, taxes, and upkeep of the Lake Montowese Property, with the exception of one year's property tax and homeowner's insurance payments,[2] and $2,000—$3,000 contributed by defendant for general repairs.

In 1986, a joint checking account was opened in plaintiff's and defendant's names. Plaintiff contributed all of the money to the account. The purpose of the account was to allow defendant to handle plaintiff's financial affairs. When the balance in the checking account grew too large, defendant would make investments from the account for plaintiff. Defendant bought a Corvette and various investments with money from this account, which he titled either jointly with plaintiff or solely in his name.

Revocable Trust was still in effect at the time of Mr. Fieser's death on August 7, 1986. At that time, the combined resources of Mr. Fieser and plaintiff were less than $500,000.[3] Under the terms of Revocable Trust, it therefore merged into a single revocable trust for plaintiff's benefit.[4] Defendant remained in his capacity as trustee.

In November 1994, plaintiff met Frank Holdener. In April 1995, plaintiff and Holdener purchased a house together in Rolla, Missouri and moved there.

On October 19, 1995, plaintiff sent defendant a notice of Revocation and Termination of Revocable Trust and requested the Lake Montowese Property be deeded to her in her individual capacity. Shortly thereafter, defendant cut all ties plaintiff had with the family business. Defendant removed plaintiff from the Board of Directors, removed her as President, and terminated plaintiff's health insurance benefits and deferred compensation.

Plaintiff and Frank Holdener were married in early 1996. In January 1996, plaintiff made a second demand defendant vacate and deed the Lake Montowese Property to plaintiff. Defendant refused to do so and further refused to sign over the investment assets he had purchased for plaintiff and titled jointly.

In February 1996, plaintiff brought suit against defendant seeking ownership of the investment assets, damages from defendant's breach of the deferred compensation agreement, and seeking a declaratory judgment the Lake Montowese Property was held in trust for the sole benefit of plaintiff subject to the terms of Revocable Trust, and said trust had been properly revoked vesting property solely in plaintiff.

The trial court found for defendant on all claims but found the investments were the "sole and separate property of plaintiff," and ordered defendant "to execute any indicia of title requested by plaintiff." The trial court also found "Francis Holdener has had such an undue influence on and has dominated and controlled the actions and thoughts of [plaintiff] such that her acts are not her free acts and deeds." Further, the trial court found Fieser Services had a contractual obligation, with regard to the deferred compensation, to pay plaintiff $1,200 per month from January 1, 1984, through December 1, 1999,[5] but denied defendant was liable on the basis plaintiff had received, in the aggregate, more than

---

**2.** Defendant paid for these after plaintiff attempted to revoke Revocable Trust.

**3.** The 1986 exemption equivalent under the Internal Revenue Code.

**4.** This is as opposed to creating a second marital trust, for the benefit of the surviving spouse, if the assets had exceeded $500,000.

**5.** 1999 is an error on the part of the trial court. Fifteen years of deferred compensation payments beginning on January 1, 1984, would end on December 1, 1998.

she was entitled to under the deferred compensation agreement. This appeals follows.

■ Plaintiff's first point on appeal is whether the trial court erred in finding for defendant on plaintiff's petition for declaratory judgment to revoke the trust based on undue influence, in that defendant failed to affirmatively raise the defense of undue influence and therefore waived such defense. We find to so rule was in error.

■ A party must set forth any "matter constituting an avoidance or affirmative defense." Rule 55.08. An affirmative defense is defined as one which "seeks to defeat or avoid plaintiff's cause of action [and] . . . avers that even if the petition is true the plaintiff cannot prevail because there are additional facts that permit the defendant to avoid legal responsibility." *Farm Bureau Town & Country Insurance of Missouri v. Hilderbrand,* 926 S.W.2d 944, 948 (Mo.App. W.D.1996). Undue influence has been identified as an affirmative defense in will contests. *See* MAI 32.18 (5th Ed.) Such matter must be affirmatively pled in order to put the plaintiff on notice defendant intends to raise matters outside the scope of the petition so plaintiff will be prepared to address such issues. *Schimmel Fur Co. v. American Indemnity Co.,* 440 S.W.2d 932, 939 (Mo.1969). When a defendant fails to plead such a defense, it is considered generally waived. *Detling v. Edelbrock,* 671 S.W.2d 265, 271 (Mo. banc 1984). The trial court may not premise its judgment on such defense. *See id.* An appellant, however, may impliedly or expressly consent to trying the case on the defense. *Id.*

Defendant did not plead undue influence in any manner at any stage of the proceeding, thereby depriving plaintiff of notice of the defense. Further illustrative of the fact plaintiff was not notified of undue influence as a defense were the trial court's statements when defense counsel attempted to introduce evidence of Mr. Holdener's involvement. Plaintiff objected to the questions about Mr. Holdener on the ground they were irrelevant. The trial court responded, "I'll let you

go into this little area. This is not something that's going to be very helpful to me in deciding what are pretty cut and clear issues. I'll let you go a little bit. . . ." Further there is nothing before us indicating plaintiff impliedly consented to such a defense. Defendant did not plead and did not attempt to prove undue influence and therefore waived it as a basis for judgment.

■ However, it must be noted we may still affirm the trial court's judgment in favor of defendant. "A bench tried judgment which reaches the correct result will not be set aside even if the trial court gives a wrong or insufficient reason for its judgment." *Graue v. Mo. Property Ins. Placement,* 847 S.W.2d 779, 782 (Mo.banc 1993). We will therefore affirm the judgment if any other proper grounds exist within the record.

■ At trial and on appeal, defendant argued plaintiff should not be allowed to revoke the trust based on the principle of equitable estoppel. We find this argument has little merit. In Missouri, the elements of equitable estoppel are: (1) an admission, statement or act inconsistent with the claim afterwards asserted and sued on; (2) action by the other party on the faith of such admission, statement or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act. *Miskimen v. Kansas City Star Co.,* 684 S.W.2d 394, 400 (Mo.App. W.D. 1984). Plaintiff always maintained the Lake Montowese property was hers. This was evidenced by plaintiff's refusal to sell it to defendant on numerous occasions claiming she wanted to retain it in her family [6] and wanted it as an investment. Further, plaintiff paid the majority of taxes and upkeep on the property. All statements by plaintiff indicated defendant could live in the home until she wanted it back. Defendant does not deny this but attempts to argue the payments of deferred compensation (in frequency and amount) were tied to his right to live in the home. However, the deferred compensation agreement states otherwise.

---

**6.** Apparently there were marital problems between defendant and his wife. The record indicates defendant's wife moved out of the Lake Montowese Property at least once and defendant hid assets from his wife in plaintiff's bank account.

Moreover, defendant admittedly stopped all deferred compensation payments to plaintiff when she made her first attempted revocation. Because defendant failed to meet the burden of proving an admission inconsistent with the claims afterwards asserted and sued on, defendant's equitable estoppel argument fails.

■ Defendant's other argument was plaintiff failed to prove her right to revoke the trust. Defendant's argument is the counterpoint to plaintiff's second point on appeal, that the trial court erred in denying plaintiff's right to revoke the family trust. As the following demonstrates, we find plaintiff had a right to revoke said trust as a matter of law.

■ In determining the meaning of a trust provision under Missouri law, the paramount rule of construction is that the settlor's intent is controlling, and such intention must be ascertained primarily from the trust instrument as a whole. *Boatmen's Trust Co. v. Sugden*, 827 S.W.2d 249, 253 (Mo.App. E.D.1992). "A deed and a trust agreement may be construed together as parts of one transaction and as establishing the trust." *Ervin v. Davis*, 355 Mo. 951, 199 S.W.2d 366, 369 (1947). Where a trust instrument does not provide for the method of distribution upon termination, "the trustee will have a duty to make delivery to such a party as is equitably entitled thereto and to deliver such instruments of transfer as the carrier of the property reasonably requires...." *Barry v. Barry*, 579 S.W.2d 136, 140 (Mo.App. E.D. 1979) (citing Bogert, Trusts and Trustee, Ch. 47, Sec. 1010, p. 577). Further, when more than one settlor contributes to the trust, they "are entitled to receive the amounts which they contributed." *Id.* (citing Restatement of Trusts, Second Chapter 12, Sec. 411(j)).

■ In Missouri, "co-ownership of property by a husband and wife creates a presumption of tenancy by the entirety." *Lederle v. Lederle*, 916 S.W.2d 423, 429 (Mo. App. E.D.1996). When spouses have a tenancy by the entirety, each spouse owns the whole estate rather than a share or divisible part of the estate, and thus at the death of a spouse, the surviving spouse continues to hold title to the full estate. *State ex rel. State Hwy. Com'n v. Morganstein*, 649 S.W.2d 485, 488 (Mo.App. W.D.1983). "Neither spouse can destroy the tenancy by his or her individual act so as to defeat the right of the other to take the entire estate as the survivor." *In re Estate of King*, 572 S.W.2d 200, 211 (Mo.App.K.C.D.1978).

The terms of Revocable Trust are clear. Either of the settlors, Leo H. Fieser, Sr., or plaintiff, had the right to revoke the trust. The only issue was as to what portion of the trust plaintiff owned and therefore had the right to revoke. The only property in the trust was the Lake Montowese Property. The property was purchased by Leo H. Fieser Sr., and plaintiff in the late 1950s, some twenty years into their marriage. In 1980, both Leo H. Fieser, Sr., and plaintiff, as evidenced by the deed, conveyed the Lake Montowese Property into Revocable Trust. It is clear this property was owned by plaintiff and her late husband as a tenancy by the entirety. Therefore, plaintiff contributed an undivided interest in the property, and when Leo Fieser, Sr., died, plaintiff, as the surviving spouse, became the owner of the property in fee simple. Accordingly, when plaintiff revoked the trust, she was entitled to the whole Lake Montowese property.

■ Plaintiff's third point on appeal is whether the trial court erred in concluding plaintiff's deferred compensation agreement had been satisfied in the aggregate. We agree with plaintiff's arguments the trial court erred in this respect.

■ "[W]e must sustain the trial court's decree unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo.banc 1991). The trial court found defendant had a contractual obligation to pay plaintiff deferred compensation, however, the court found defendant had paid over and above the amount in the aggregate. We defer to the trial court's finding a contractual obligation existed. However, the trial court erroneously applied the law in finding the obligation was satisfied in the aggregate.

■ Missouri courts have rejected prepayment arguments. In *Leroux v. Doniphan Retirement Home, Inc.*, 663 S.W.2d 791, 793 (Mo.App.S.D.1984), the court stated, "[P]ayments on a note made when not required do not excuse payment of subsequent installment payments on their due date." Similarly, in the child support setting, a parent who voluntarily exceeds the decreed amount of child support payments may not claim a credit against future payments. *Finley v. Morrow*, 697 S.W.2d 543, 544 (Mo.App. S.D.1985).

The Board Resolution established plaintiff's right to be paid $1,200 each month for fifteen years. Payments made by defendant in excess of the $1,200 per month are not considered prepayment as against future payments. Defendant stopped paying plaintiff her deferred compensation after November 1995. Plaintiff was entitled to these payments until December 1998. Nothing in the record indicates there was an arrangement for prepayment, or plaintiff was notified her monthly payments were being considered as prepayments. Accordingly, we remand to trial court to determine the amount which plaintiff was entitled, including any interest if appropriate, and enter such orders as are necessary.

■ Plaintiff's final point on appeal is whether the trial court erred in denying plaintiff her attorney's fees and costs. We find no error.

■ "Generally, attorney's fees are recoverable only when called for by contract or provided by statute, or as an item of damage when their incurrance involves the wronged party in collateral litigation, or occasionally, when a court of equity finds it necessary to award them in order to balance benefits." *Hoffman v. Quality Chrysler Plymouth Sales, Inc.*, 706 S.W.2d 576, 581 (Mo.App. E.D.1986). In this case no evidence of a contract or statute was presented; we find no abuse of discretion, and therefore affirm the trial court's denial of plaintiff's attorney's fees and costs.

Based on the foregoing, we reverse the judgment and remand for entry of a judgment consistent with this opinion.

GRIMM, P.J., and PUDLOWSKI, J., concur.