CITY OF PECULIAR, Missouri,
Respondent,

v.

EFFERTZ BROS INC.,
et al., Appellants.

No. WD 67554.

Missouri Court of Appeals,
Western District.

Jan. 22, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 29, 2008.

Application for Transfer Denied
June 24, 2008.

James E. Thompson, Jr., Harrisonville, MO, Steven E. Mauer, Co–Counsel, Megan J. Redmond, Co–Counsel, Kansas City, MO, for Respondent.

Joseph A. Hamilton, Pleasant Hill, MO, Matthew J. Hamilton, Co–Counsel, Pleasant Hill, MO, Alok Ahuja, Co–Counsel, Kansas City, MO, for Appellants.

Before: HOWARD, C.J., and BRECKENRIDGE and ELLIS, JJ.[1]

VICTOR C. HOWARD, Chief Judge.

Effertz Bros., Inc. and several other landowners (Landowners) appeal from a declaratory judgment authorizing the City of Peculiar (the City) to proceed with an involuntary annexation of unincorporated land in Cass County pursuant to section 71.015.[2] The Landowners now claim that the circuit court erred in authorizing the annexation because the City's plan of intent was deficient, the annexation was not reasonable and necessary to the proper development of the City, the evidence did not demonstrate that the City was able to provide municipal services to the annexed area within a reasonable time, and the circuit court's judgment noted that the an-

nexation would allow the City to "defend its border" from other encroaching cities. We affirm the circuit court's judgment.

### The Sawyer's Act

Section 71.015, commonly known as the Sawyer's Act, provides constitutionally chartered cities a statutory mechanism for the involuntary annexation of adjacent unincorporated land. *See* § 71.015; *City of St. Peters v. Ronald A. Winterhoff Living Trust (Winterhoff I)*, 77 S.W.3d 17, 19–20 (Mo.App. E.D.2002). The Sawyer's Act contemplates a four-step process designed to accommodate an expanding city. To complete annexation, the city must propose an ordinance detailing the annexation, hold a public hearing concerning the annexation, seek a declaratory judgment authorizing the annexation, and finally hold an election where a majority of the electors of both the city and the land to be annexed approve the annexation. *See* § 71.015.1.

In the first step of involuntary annexation, the city's ordinance must include a description of the land to be annexed and state that such annexation is reasonable and necessary to the proper development of the city, that the city has developed a plan of intent to provide services to the land to be annexed, that a public hearing be held, and the date that the annexation is to become effective. § 71.015.1(2). The ordinance must also contain a statement that the annexed land is contiguous and that the proposed common boundary of the annexed land and the preexisting city be at least 15% the length of the border of the

---

1. Breckenridge, J., was a member of this court at the time the case was argued and submitted. She was subsequently appointed a judge of the Supreme Court of Missouri but has been reassigned to this court as a special judge for the purpose of disposition of this case.

2. All citations to statutes refer to Missouri Revises Statutes 2000 and all citations to rules refer to Missouri Supreme Court Rules (2007) unless otherwise noted.

entire land to be annexed. § 71.015.1(1)-(2).

After the ordinance is passed, the City must then notify interested parties and hold a public hearing concerning the annexation. § 71.015.1(3). At the hearing the City must present "the plan of intent and evidence in support thereof," including: a schedule describing when the city will provide municipal services, the level at which the city taxes property, proposed zoning of the annexed area, and when the anticipated annexation will be effective. § 71.015.1(4).

■ Following a public hearing and passage of the ordinance, the municipality must file a declaratory judgment action in circuit court, seeking authorization for the annexation. § 71.015.1(5). A complete petition consists of facts demonstrating that the city meets the 15% contiguous requirement described above, that "annexation is reasonable and necessary to the proper development of the city," and the city is able to provide municipal services to the annexed area within a reasonable time. § 71.015.1(5)(b)-(c). For the annexation to proceed, the circuit court must conclude that each of the elements pled in the petition is at least "fairly debatable." *City of St. Charles v. Schone*, 569 S.W.2d 769, 774 (Mo.App.1978).

■ "An election also must be held in the municipality and the proposed territory, during which the involuntary annexation must be approved by a majority of the total votes cast." *City of St. Joseph v. Vill. of Agency*, 223 S.W.3d 171, 173 (Mo. App. W.D.2007). The annexation may proceed if majorities of votes cast in both the city and the annexed area both favor annexation. An annexed area may be subject to deannexation if the City does not provide certain services within three years of the annexation. § 71.015.1(7), 71.015.2.

### Facts and Background

Pursuant to section 71.015, the City initiated an involuntary annexation of sparsely populated unincorporated land adjacent to and northwest of the existing city limits. On December 2, 2002, the City adopted an ordinance authorizing the annexation of the parcel. The Court issued a declaratory judgment authorizing the annexation on July 26, 2006, which found that all of the statutory requirements of 71.015 had been fulfilled. As mandated by statute, an election was later held and the voters approved the annexation. The current appeal follows.

Prior to the annexation, the City's total land area was 2,331 acres and the land to be annexed consisted of 1,445 acres. The City produced evidence that it had experienced "explosive" growth and lacked large, unplanned parcels of land within the city suitable for large-lot residential, commercial, or industrial development. The City also produced evidence that it lacked 80–acre plots within the City suitable for a heavy industrial park. The City's plan of intent referred to the City's need for additional multiple acre residential lots and noted that "[t]he proposed annexation area is on the verge of a significant transition from agriculture to rural and urban residential." At trial, the City's Administrator testified that the land might also be used for commercial, or light or heavy industrial purposes. The annexation did not conform to the County's Future Land Use Plan of 1997 and the City's Comprehensive Plan of 1999, which predicted growth of the city to the northeast and southwest, not to the northwest. Consistent with these forecasts, little or no actual spillover had occurred on the land to be annexed but had occurred in the northeast and southwest of

the City.[3]

The City admitted that over 1,200 acres within the City were not presently developed. All of the land within the City's pre-annexation boundaries was, however, developed or planned for development. The Landowners presented evidence that 65% of the land within the City was undeveloped and that without annexation the City had a twenty-year supply of undeveloped land within its boundaries.

The Landowners, appellants in the current case, owned approximately 70% of the land to be annexed. Of all the land to be annexed, the Landowner's property is located closest to the City. When this appeal was initiated, much of that land was subject to an order of the Circuit Court requiring Board of Zoning Adjustment to issue a Special Use Permit for rock quarrying. However, that order was appealed and we reversed the decision, holding that the Board of Zoning Adjustment need not issue the Special Use Permit for Rock Quarrying. *Martin Marietta Materials, Inc. v. Bd. of Zoning Adjustment of Cass County,* 246 S.W.3d 9 (Mo.App. W.D.2007).

The remaining 30% of the land to be annexed, the roughly 423 acres farthest away from the City, is owned by the Bockelman Family (Bockelman). Bockelman wished to develop the property into 228 single-family residences. Due to the condition precedent in section 71.015.1(1), which requires that the perimeter of the annexed land that borders the pre-existing city be at least 15% the length of the total annexed land, the City was not able to annex the Bockelman property without also annexing Landowners' property. While nominally defendants in the current

action, Bockelman desires annexation in order to provide municipal services to the planned development.

In its plan of intent, the City proposed to provide the annexed area with police, fire, water, refuse collection, and ambulance services. Prior to the annexation, the City was providing police services to the area pursuant to a "mutual aid" agreement with Cass County. The City produced significant evidence that it was able to furnish sanitary sewer service to the annexed area, although the exact funding mechanisms for these improvements remained unclear. The City also intends to maintain the roads presently existing in the area in their present condition until additional development creates a need for improved roads. The plan of intent provides neither a cost estimate of providing municipal services for the annexed area nor a concise timetable describing when those services will be provided nor did it provide plans for rezoning.[4]

### Standard of Review

"The decision to annex contiguous unincorporated areas [is] essentially a legislative decision resting within the discretion of the City's governing body." *Schone,* 569 S.W.2d at 774.

> Neither the trial court nor this court on appeal may interpose its judgment as to the advisability or the wisdom of the proposed annexation for that of the City's legislators. Our function, under the Sawyer Act, is to determine whether the City has presented sufficient competent evidence to make compliance with the statutory prerequisites imposed by the Sawyer Act "fairly debatable."

---

3. The generation of new sources of tax revenue was not the City's driving motive behind the proposed annexation. The total assessed value of the annexed land is $155,750 and the tax levy is $0.4505 per $100 of assessed value.

4. Additional facts will be discussed where necessary.

*Id.* Nevertheless, "[t]he function of this court in reviewing a declaratory judgment authorizing a city to proceed with annexation is to review the case de novo on questions of law." *City of Pacific v. Metro Development Corp.*, 922 S.W.2d 59, 62 (Mo. App. E.D.1996).

It is the City's burden to demonstrate that it was at least fairly debatable that the annexation was proper. *City of St. Peters v. Ronald A. Winterhoff Living Trust (Winterhoff II)*, 117 S.W.3d 698, 700 (Mo.App. E.D.2003). "Under this standard, the extent of judicial inquiry is whether substantial evidence has been presented by the city to support the determination of its governing body such that reasonable men could differ as to the necessity of the extension." *City of Centralia v. Norden*, 879 S.W.2d 724, 727 (Mo. App. W.D.1994). When determining if a city has met the prerequisites for a valid annexation "[t]here are no fixed rules, and each case must be decided upon its own set of unique facts." *Winterhoff II*, 117 S.W.3d at 700.

### Deficiency of the Plan of Intent

The Landowners claim that the City failed to prepare an adequate plan of intent, as required by statute, and that omission constitutes an independent ground for reversal. Here, a fatal omission in the plan of intent was an affirmative defense. Because that affirmative defense was not raised in the Landowner's answer to the City's petition, the claim is not preserved for appellate review. "Failure to pled an affirmative defense constitutes a waiver of the defense." *Leo's Enters., Inc. v. Hollrah*, 805 S.W.2d 739, 740 (Mo.App. W.D.1991).

The claim that the plan of intent was deficient and, as a result, rendered later proceedings ineffective is an affirmative defense. "An affirmative defense is a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecutor's claim, even if all the allegations in the complaint are true." *Velda City v. Williams*, 41 S.W.3d 915, 918 (Mo.App. E.D.2001) (internal quotation omitted).

In pleading to a preceding pleading, a party shall set forth all applicable affirmative defenses and avoidances, *including but not limited to* accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, comparative fault, state of the art as provided by statute, seller in the stream of commerce as provided by statute, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, truth in defamation, waiver, and any other matter constituting an avoidance or affirmative defense. Rule 55.08 (emphasis added). *See also* BLACK'S LAW DICTIONARY 451 (8th ed.2004) (affirmative defense defined). "An affirmative defense contemplates additional facts not included in the allegations necessary to support plaintiff's case and avers that plaintiff's theory of liability, even though sustained by the evidence, does not lead to recovery because the affirmative defense allows the defendant to avoid legal responsibility." *Parker v. Pine*, 617 S.W.2d 536, 542 (Mo.App. W.D.1981). "In applying Rule 55.08 and in determining what defenses must be affirmatively pleaded ... the test applied is whether the defendant intends to rest his defense upon some fact not included in the allegations necessary to support the plaintiff's case." *Layman v. Sw. Bell Tel. Co.*, 554 S.W.2d 477, 480 (Mo.App.1977).

When seeking its declaratory judgment, the City was not required to

plead or prove the existence of a plan of intent, let alone, an adequate plan of intent. *See* § 71.015.1(5). To receive a declaratory judgment authorizing annexation, it was only required to state facts demonstrating that the annexed area met certain contiguous and compact requirements, that the annexation was reasonable and necessary for the proper development of the City, and that the City was able to provide normal municipal services to the annexed area within a reasonable time. *Id.* Furthermore, a failure to produce an adequate plan of intent may result in a trial court's refusal to authorize the annexation. *See City of St. Peters v. Klein*, 954 S.W.2d 586, 591–92 (Mo.App. E.D.1997) (where city's amended plan of intent was fundamentally different from the original plan of intent, trial court erred in authorizing annexation). *See also City of Lake Winnebago v. Gosewisch*, 932 S.W.2d 840, 843 (Mo.App. W.D.1996) ("[T]he city *must* propose an ordinance stating, among other things, that the city has developed a 'Plan of Intent' to provide the annexed area with services." (emphasis added)); *City of Rolla v. Armaly*, 985 S.W.2d 419, 429 (Mo.App. S.D.1999) ("As we understand the statute, the key event is the entry of judgment authorizing annexation, not the timing of a city's filing. Ultimately, the city is authorized to proceed *only* with the plan the court approves." (emphasis added)).[5] Because the lack or fatal deficiency of a plan of intent may defeat an annexation and it need not be pled in the City's petition, it is necessarily an affirmative defense.

 Rule 55.08 requires that all affirmative defenses be pled in responsive pleadings or be abandoned. *Brizendine v. Conrad*, 71 S.W.3d 587, 593 (Mo. banc 2002). Failure to plead affirmative defenses will result in their waiver. *Holdener v. Fieser*, 971 S.W.2d 946, 950 (Mo.App. E.D. 1998); *Leo's Enters., Inc.*, 805 S.W.2d at 740. The Landowners specifically raised several affirmative defenses in their answer;[6] however, the affirmative defense that the plan of intent was so deficient as to render all later proceedings a nullity was not raised.

 We likewise find no pressing need to reverse under a plain error review. Rule 78.08. We agree with the circuit court, which held that "[t]he city's plan of intent is somewhat lacking in terms of specificity, certainty, and clarity"; nevertheless, the plan of intent here adequately performs its major duties. Here, the "plan of intent and evidence in support thereof"[7] describe the land to be annexed, outline services provided by the City and when the City would begin the process of extending those services to the annexed area, the taxation rate, proposed zoning, and when the annexation would become effective. Such is sufficient to avoid plain error review.

---

**5.** It is unclear if the absence of a plan of intent in its entirety or its deficiency is a procedural or substantive violation of the Sawyer's Act. "[P]rocedural violations must result in prejudice in order to deny authority to annex." *Gosewisch*, 932 S.W.2d at 845. We reserve that question for a later date.

**6.** Among them was a statement that "Illegality bars Plaintiff's prayer to the Court. Plaintiff is barred by the Doctrine of Prior Jurisdiction as other municipalities have the true claim to the land at issue. *Plaintiff has failed to comply with the provisions of RSMo*

71.015." (Emphasis added.) "An affirmative defense should be clearly and distinctly set forth." *Flint–Walling Mfg. Co. v. Ball*, 43 Mo.App. 504, 511 (Mo.App.1891). *See also Reese v. Garth*, 36 Mo.App. 641, 645 (Mo.App. 1889). The bald statement that the City failed to comply with section 71.015 raises no affirmative defense. It provides the court and the City with no inkling of the purported error made by the City.

**7.** § 71.015.1(4).

### The City's Ability to Provide Municipal Services

■ The City claims that:

Separate from the demonstration required by § 71.015.1(5)(b)—that annexation is reasonable and necessary to the City's proper development—a municipality seeking to annex property must present substantial evidence of "[t]he ability of the city ... to furnish normal municipal services of the city ... to the unincorporated area within a reasonable time."

Unlike the claim concerning omissions of the plan of intent, discussed in the preceding point, the City was required to plead that it had the ability "to furnish normal municipal services ... to the unincorporated area within a reasonable time." § 71.015.1(5)(c). The ability of the City to provide municipal services is, therefore, not an affirmative defense; rather, it is part of the City's case.

The City claims that the issue is unpreserved for appellate review because the issue was not squarely brought before the circuit court at the appropriate time. *See Bunting v. McDonnell Aircraft Corp.*, 522 S.W.2d 161, 168 (Mo. banc 1975). They note that failure to obtain a definitive ruling waives the issue for appeal. *See Sykes v. Bi–State Dev. Agency*, 716 S.W.2d 856, 859 (Mo.App. E.D.1986); *State ex rel Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 129 (Mo. banc 2000) (stating, "[a]n issue that was never presented to or decided by the trial court is not preserved for appellate review"). While Landowners contested the City's claimed ability to furnish municipal services to the annexed area, the Landowners did not cite it as an independent source for reversal in a motion for relief as a matter of law. When the parties introduced evidence of the City's ability to furnish services, it was unclear if it was one piece of evidence used to determine if the

annexation was reasonable and necessary for the City's proper development or a contention that the requirement that section 71.015.1(5)(c) was unmet.

■ Nevertheless, the Landowners were not required to request judgment as a matter of law for their claim that the opposing party offered insufficient evidence. "[T]he question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court." *State v. Dillon*, 41 S.W.3d 479, 483 (Mo.App. E.D. 2000).

■ Moreover, while appellate courts will not decide issues raised for the first time on appeal, *see Landvatter Ready Mix, Inc. v. Buckey*, 963 S.W.2d 298, 303 (Mo.App. E.D.1997), the City's ability to provide municipal services was raised in the City's petition, contested by each side with conflicting evidence, and explicitly resolved in the circuit court's judgment. The issue is preserved for appeal.

■ The City presented sufficient evidence to render the issue of its financial and technical ability to provide municipal services to the annexed area at least debatable. *See Metro Dev. Corp.*, 922 S.W.2d at 64. "An annexation resolution asserting the present ability to furnish normal municipal services to the proposed area of annexation, which is not based upon any investigation or information, is an arbitrary exercise of legislative power. A petition for declaratory judgment based upon an arbitrary annexation resolution must be denied." *City of Cape Girardeau v. Frank*, 637 S.W.2d 786, 788 (Mo.App. E.D.1982).

■ The City produced evidence at trial that it did not provide water services to the residents of Peculiar. It was, therefore, not required to provide those water

services to the annexed area. "With respect to the level of services, the City must merely prove that it will be in a position within a reasonable time to furnish to the annexed area the same level of municipal services which it is currently furnishing to its existing populace." *Id.* at 787. Moreover, the City produced evidence that its wastewater treatment facility was operating only at half capacity and that multiple options were technically feasible to run sewer lines out to the annexed area. The City provided several possible avenues for funding the construction of the sewer line, including the issuance of a municipal bond or a municipal lease purchase agreement. The City's financial advisor also testified that the City was in good financial condition and would be able to afford the expansion of the sewer line. Furthermore, the Plan of Intent noted that fire services, which were provided by the City to the annexed area before the annexation, would continue, and police services would be extended to the annexed area without an immediate need for hiring additional officers. The evidence produced at trial is sufficient to determine that the City's ability to provide municipal services to the annexed area was at least debatable.

### Annexation was Reasonable and Necessary

Even after our decision in *Martin Marietta Materials, Inc. v. Board of Zoning Adjustment of Cass County,* 246 S.W.3d 9 (Mo.App. W.D.2007), the Landowners present a close case as to whether it is fairly debatable that the current annexation is "reasonable and necessary to the proper development of the city." § 71.015.1(5)(b). Nevertheless, despite the far from overwhelming evidence in support of a reasonable and necessary determination, the City introduced sufficient evidence to affirm the circuit court's judgment.

The Sawyer's Act requires that the legislative determination to annex be "reasonable and necessary to the proper development of the city." *Id.* "[B]oth parties, the city and the area proposed, are entitled to the benefit of the test of reasonableness. In other words, the annexation must be reasonable as to those living in the outside area, as well as to those living in the city." *City of Bourbon v. Miller,* 420 S.W.2d 296, 300 (Mo. banc 1967) (internal citation omitted). "[A] case of reasonableness is made where it appears that the land annexed is so situated as to be adaptable to urban purposes, and necessary or convenient to reasonable exercise of the city government." *City of Perryville v. Brewer,* 557 S.W.2d 457, 462 (Mo.App. 1977) (citation omitted). "[A] city need only demonstrate that substantial evidence exists which indicates that its legislative decision to annex was reasonable and necessary, therefore rendering the annexation issue fairly debatable." *Winterhoff I,* 77 S.W.3d at 20.

> [I]n reviewing a city's legislative decision to annex, if the Court determines there is no substantial evidence to show that annexation was reasonable and necessary, the annexation must be set aside; if the Court concludes there is substantial evidence that annexation was reasonable and necessary, then the issue was at least debatable and the legislative action must be permitted to stand.

*City of Town & Country v. St. Louis County,* 657 S.W.2d 598, 605 (Mo. banc 1983). "If annexation of any area included in the proposal were to be found unreasonable, the petition must be dismissed." *Klein,* 954 S.W.2d at 591. "[T]he extent of judicial inquiry is whether substantial evidence has been presented by the city to support the determination of its governing body such that reasonable men could differ

as to the necessity of the extension." *Norden*, 879 S.W.2d at 727. When determining if a city has met the prerequisites for a valid annexation "[t]here are no fixed rules, and each case must be decided upon its own set of unique facts." *Winterhoff II*, 117 S.W.3d at 700.

▮▮▮▮ "In the absence of statutory standards or guidelines the courts perforce have enumerated their own." *City of Mexico v. Hodges*, 482 S.W.2d 545, 547 (Mo.App.1972). Missouri courts generally cite twelve non-exclusive factors when analyzing the reasonable and necessary determination. These are:

(1) a need for residential or industrial sites within the proposed area; (2) the city's inability to meets its needs without expansion; (3) consideration only of needs which are reasonably foreseeable and not visionary; (4) past growth relied on to show future necessity; (5) in evaluating future needs, the extent to which past growth has caused the city to spill over into the proposed area; (6) the beneficial effect of uniform application and enforcement of municipal zoning ordinances in the city and in the annexed area; (7) the need for or the beneficial effect of uniform application and enforcement of municipal building, plumbing and electrical codes; (8) the need for or the beneficial effect of extending police protection to the annexed area; (9) the need for or beneficial effect of uniform application and enforcement of municipal ordinances or regulations pertaining to health; (10) the need for and the ability of the city to extend essential municipal services into the annexed area; (11) enhancement in value by rea-

son of adaptability of the land proposed to be annexed for prospective city uses; and (12) regularity of boundaries.

*Gosewisch*, 932 S.W.2d at 846. Although most courts analyze the reasonable and necessary determination as a test of factors, some support exists which describes several factors as prerequisites to a proper annexation.[8] In any event, several factors are more telling of the City's need for annexation than are others. *See City of Mexico v. Salmons*, 514 S.W.2d 102, 104 (Mo.App.1974) (stating, "While we do not have a slide-rule formula to determine reasonable necessity, we do consider certain criteria material. The petitioning city should evince a need for residential or industrial sites within the proposed area. Since the statute requires that annexation be reasonably necessary, petitioner should also manifest an inability to meet its needs without expansion.... These criteria guide us in our study of the evidence." (internal footnotes omitted)).

The City produced evidence that it was undergoing "explosive" growth and lacked a sufficient supply of land within the City and that annexation was necessary to develop properly. The population of the City had expanded from 777 in 1990 to approximately 4797 in 2006. Moreover, the rate of building permits issued by the City has drastically accelerated. In 2002, the City issued 45% more building permits than the previous year. Three quarters of the way through 2006, the City had exceeded the number of permits issued in 2005.

Moreover, the City claims that city services are needed on the annexed land. The City presented evidence that it lacked

---

8. *See City of Flat River v. Counts*, 596 S.W.2d 446, 449 (Mo.App. E.D.1979) (stating, "To justify the annexation of the unincorporated area, it is incumbent upon the City to establish the need for additional space and its inability to meet that need without expan-sion."); *c.f. Armaly*, 985 S.W.2d at 431 ("The presence or absence of any individual factor is not determinative, and reasonableness and necessity must be judged on a case-by-case basis.").

large, 80–acre tracks available for development within the City. All other land within the City was either developed or planned for development.

Bockelman, an owner of a significant amount of land to be annexed, requested that the City proceed with the annexation so that he would be able to obtain city services for the planned 228 single-family residence development. Other landowners claim no city services are needed nor would those services increase the value of the land if provided. In any event, we can conclude that the services will be needed on at least roughly 30% of the annexed land.

■■■■■ The Landowners insist that annexation was inappropriate because 65% of the land then existing in the City was undeveloped when the annexation was initiated.[9] The presence of undeveloped tracts of land does not preclude annexation, but it is a factor, which must be considered, especially as the City failed to offer a satisfactory explanation as to the unsuitability for urban development of the large tracts of vacant land. *Miller*, 420 S.W.2d at 303; *Counts*, 596 S.W.2d at 450. As noted earlier, the City produced evidence that it lacked land for large-acre residential development and large industrial tracks. It also noted that "[e]very city needs those large tracts of land." The unavailability of large tracts of land within the city, combined with the testimony that every city needs such tracts, bodes strongly in favor of the City and annexation.

The Landowners present additional evidence in support of their position that annexation was not reasonable and necessary for the proper development of the City; however, under the current standard of review, we only examine the evidence to determine that reasonable people could disagree as to the propriety of annexation. *See City of Parkville v. N. Farms*, 950 S.W.2d 882, 885 (Mo.App. W.D.1997) ("When we review the decision to annex, we examine whether there is substantial evidence that the reasonableness and necessity of the annexation are fairly debatable.") "[T]he extent of judicial inquiry is whether substantial evidence has been presented by the city to support the determination of its governing body such that reasonable men could differ as to the necessity of the extension." *Norden*, 879 S.W.2d at 727. Here, the additional contradictory evidence of the reasonable and necessary determination set forth by the Landowners does not lessen the amount of evidence admitted by the City.

### Circuit Court relied on an Improper Justification

The Landowners claim that the circuit court's discussion of the annexation is suspect in that it relies partially on an improper justification and insist that an attempted annexation based on this improper justification is ineffective.

■■■■ The Court based its reasonable and necessary determination on five explicit findings of facts. One of those stated that:

The cities of Belton and Raymore continue their southward expansions toward Peculiar. The City of Raymore already extends south of 203rd Street and Belton extends north to 203rd Street. The proposed annexation will allow Peculiar to extend its northern boundary west of Highway 71 to 203rd Street. The proposed annexation would allow Peculiar to protect its northern boundaries, and

9. This figure, however, is suspect. While, 65% of the land may have been undeveloped, that figured included an unidentified portion of school and park land.

to maintain the regularity of its boundaries.

The court's reliance on the "protection of the boundaries" benefit of annexation is inappropriate. The Sawyer's Act does not recognize competition among cities for unincorporated land as a permissible reason for annexation.

 The defensive benefit of annexation described by the circuit court is an impermissible factor in annexation—it makes an annexation no more reasonable and necessary than it would be without. In Missouri, municipalities function

> to serve the general interests of [their] residents, not to engage in competition for the right to collect revenues, provide services and the like. The legislature has provided the residents with the means to assert their preferences for such entities. Parties involved in annexation cases should note that the legislature's actions affirm the responsibility of government for the needs of those whom it serves, and not the needs of government in a continuing quest to serve itself.

*City of Town & Country,* 657 S.W.2d at 606. Accordingly, rapidly expanding to claim land in a defensive maneuver cannot function to make an annexation more reasonable and necessary under the Sawyer's Act. Furthermore, the courts have no rubric to assist in deciding which municipality should control a particular parcel of unincorporated land. The Sawyer's Act establishes a system of first-come-first-served for annexation. *See generally City of Liberty v. Tindall,* 918 S.W.2d 361, 363 (Mo.App. W.D.1996). While this dynamic may place a practical pressure on a city to annex an area before its neighbor city is able to do so, that pressure makes the annexation no more reasonable or necessary than it would be without those influences.

 Nevertheless, after an exhaustive review of the record, we determine that the circuit court's improper statement did not materially affect the merits of the action. *See* Rule 84.13(b). While the Landowners are correct in noting that the defensive annexation rationale "standing alone—cannot justify an involuntary annexation under Missouri Law," here, it does not stand alone. The existence of a secondary impermissible motivation of annexation will not render an otherwise permissible annexation impermissible. As our standard of review limits us to deciding whether the determination that the annexation is reasonable and necessary is "fairly debatable," a single finding of improper motivation [10] or result will not doom the annexation. The City had several other legitimate reasons for annexation, including the regulation of the nearby land so that it would not become noxious to the City and the control over the City's ordinary and reasonable development.[11]

### Conclusion

For the reasons stated above, we affirm the judgment of the circuit court.

BRECKENRIDGE and ELLIS, JJ., concur.

---

10. This seems particularly evident in light of the innate difficulty in ascertaining the motive and purpose, be it proper or improper, of a corporate body.

11. Control of zoning of neighboring land is not a sufficient rationale for justifying an annexation. *See City of Odessa v. Carroll,* 512 S.W.2d 862, 868 (Mo.App.1974). Yet, apparently, it is not an impermissible motive altogether.