**CITY OF PECULIAR, Missouri, Respondent,**

v.

**MARTIN MARIETTA MATERIALS, INC., Appellant.**

**No. WD 67943.**

Missouri Court of Appeals, Western District.

July 29, 2008.

Robert K. Sellers, Esq., Kansas City, MO and Co–Counsel, Roland B. Miller, III, Kansas City, MO, for appellant.

James E. Thompson, Jr., Harrisonville, MO and Co–Counsel Steven E. Mauer, Esq., Kansas City, MO; Megan J. Redmond, Esq., Kansas City, MO; and Jeffrey A. Bullins, Esq., Overland Park, KS, for respondent.

Before Div IV: HOWARD, P.J., HARDWICK and WELSH, JJ.

LISA WHITE HARDWICK, Judge.

This appeal arises from a declaratory judgment authorizing the City of Peculiar ("City") to annex unincorporated land adjacent to the City limits. Martin Marietta Materials, Inc. ("MMM"), which owns and operates a quarry on the annexed land, challenges the sufficiency of the evidence to support the circuit court's finding that the annexation is reasonable and necessary for proper development of the City. For reasons explained herein, we affirm the declaratory judgment.

### FACTUAL AND PROCEDURAL HISTORY

MMM operates a quarry on a 600–acre tract in Cass County that lies adjacent to the westernmost boundaries of the City. The land has been used for quarry operations for more than fifty years and is otherwise uninhabited. The open pit quarry is 400 yards long, 50 yards wide, and 25 yards deep. In approximately three years, the supply of limestone in the existing quarry will run out. Portions of the quarry, which are no longer in use, have been reclaimed with topsoil and grasses to be returned to agricultural use.

On January 4, 2004, following a public hearing, the City adopted an ordinance to annex the quarry property. The annexation was subsequently approved by 87% of the City voters in a public election. Pursuant to procedures in the Sawyer's Act, Section 71.015,[1] the City filed a Petition for Declaratory Judgment Authorizing Annexation in the Cass County Circuit Court. MMM filed an answer and pleadings to oppose the annexation.

At a hearing on the petition, the City presented evidence that its population had increased by 84% since 2000, and that the residential growth pattern would move westward, in the direction of the quarry, in five to ten years. One month prior to the hearing, the City had obtained a declaratory judgment authorizing the annexation of 1,445 acres to the north of the quarry and west of the City limits. Mike Fisher, a former City administrator, explained two reasons for the additional annexation of the quarry property. First, the City wanted to accommodate the requests of residents in the Whispering Oaks subdivision

---

1. All statutory citations are to the Missouri Revised Statutes 2000, unless otherwise noted.

to be voluntarily annexed to the City. Whispering Oaks is located west of the quarry and cannot be annexed without annexation of the quarry because the subdivision's border is not contiguous to the City. Second, given the population growth pattern and the eventual annexation of Whispering Oaks, the City wanted to exercise influence over the 600–acre site after the quarry operation ceased, to insure that future use of the land would be compatible with development plans for the surrounding area.

MMM presented evidence from an urban planner, Barry Hoague, who testified that there was ample undeveloped land within the City limits and no residential or industrial spillover in the area near the quarry. Hoague concluded there was no need for the annexation because the City had "adequate land to provide for growth."

Following the hearing, the court determined the City had complied with the requirements of Section 71.015 and had demonstrated the annexation was reasonable and necessary. The court granted the declaratory judgment, thereby authorizing the annexation. MMM appeals.

### APPLICABLE LAW

Section 71.015, commonly known as the Sawyer's Act, provides the statutory mechanism by which constitutionally chartered cities can pursue the involuntary annexation of adjacent incorporated land. To complete annexation, a city must: (1) propose an ordinance dealing with proposed annexation; (2) hold a public hearing prior to adoption of the ordinance; (3) seek a declaratory judgment authorizing the annexation; and (4) hold a public election where a majority of the electors of both the city and the land to be annexed approve the annexations. § 71.015.1.

The third step of the annexation procedure is at issue in this case. In seeking a declaratory judgment to author-

ize the annexation, the City must file a petition alleging three elements: (1) the proposed annexed land is contiguous to the city and shares a common boundary that is at least 15% of the length of the perimeter of the entire land to be annexed; (2) "annexation is reasonable and necessary to the development of the city"; and (3) the city is able to provide municipal services to the annexed area within a reasonable time. § 71.015.1(5)(b)-(c). The annexation cannot proceed unless the circuit court concludes that each of the elements pled in the petition is at least "fairly debatable." *City of Peculiar v. Effertz Bros., Inc.*, 254 S.W.3d 51, 56–57 (Mo.App.2008).

The City has the burden of demonstrating that it was at least fairly debatable that the annexation was proper. *Id.* at 58–59. "Under this standard, the extent of judicial inquiry is whether substantial evidence has been presented by the city to support the determination of its governing body such that reasonable men could differ as to the necessity of the extension." *City of Centralia v. Norden*, 879 S.W.2d 724, 727 (Mo.App.1994). There are no fixed rules in determining whether a city has met the prerequisites for a valid annexation; each case must be decided on its own unique circumstances. *City of St. Peters v. Ronald A. Winterhoff Living Trust*, 117 S.W.3d 698, 700 (Mo.App.2003).

On appeal, a declaratory judgment authorizing annexation presents a question of law, which we review *de novo*. *City of Pacific v. Metro Dev. Corp.*, 922 S.W.2d 59, 62 (Mo.App.1996). Nonetheless, we are mindful that the annexation is "essentially a legislative decision resting within the discretion of the City's governing body." *City of St. Charles v. Schone*, 569 S.W.2d 769, 774 (Mo.App.1978). We cannot substitute our "judgment as to the advisability or the wisdom of the proposed annexation for that of the City's legisla-

tors." *Id.* Our function, under the Sawyer's Act, is to determine whether the City has presented sufficient competent evidence to make compliance with the statutory prerequisites "fairly debatable." *Id.*

## DISCUSSION

■ MMM contends the circuit court erred in granting the declaratory judgment because there was no substantial evidence that the annexation was reasonable and necessary for proper development of the City. MMM also contends the court erred in finding that the annexation was justified in order to give the City influence over the future use of the quarry property and to accommodate the desires of neighboring property owners in the Whispering Oaks subdivision.

■ Missouri courts generally cite twelve non-exclusive factors in analyzing the reasonableness and necessity of annexation. *Effertz Bros., Inc.*, 254 S.W.3d at 62–63. Those factors, which may be of more or less importance in a particular case, include:

(1) a need for residential or industrial sites within the proposed area;

(2) the city's inability to meet its needs without expansion;

(3) consideration only of needs which are reasonably foreseeable and not visionary;

(4) past growth relied on to show future necessity;

(5) in evaluating future needs, the extent to which past growth has caused the city to spill over into the proposed area;

(6) the beneficial effect of uniform application and enforcement of municipal zoning ordinances in the city and the annexed area;

(7) the need for or the beneficial effect of uniform application and enforcement of municipal building, plumbing, and electrical codes;

(8) the need for or the beneficial effect of extending police protection to the annexed area;

(9) the need for or beneficial effect of uniform application and enforcement of municipal ordinances or regulations pertaining to health;

(10) the need for and the ability of the city to extend essential municipal services in the annexed area;

(11) enhancement in value by reason of adaptability of the land proposed to be annexed for prospective city uses; and

(12) regularity of boundaries.

*Id.* (quoting *City of Lake Winnebago v. Gosewisch*, 932 S.W.2d 840, 843 (Mo.App. 1996)). The presence or absence of any individual factor is not determinative, as reasonableness and necessity must be judged on a case-by-case basis. *City of Rolla v. Armaly*, 985 S.W.2d 419, 431 (Mo. App.1999). " '[A] case of reasonableness is made where it appears that the land annexed is so situated as to be adaptable to urban purposes, and necessary or convenient to reasonable exercise of the city government.' " *City of Perryville v. Brewer*, 557 S.W.2d 457, 462 (Mo.App.1977) (quoting *Dressel v. City of Crestwood*, 257 S.W.2d 236, 249 (Mo.App.1953)).

Our review of the record indicates the City presented evidence in support of the annexation on most of the factors relevant to the quarry property. The first five factors address the City's need to expand into the proposed annexation area based on past growth and future necessity. The former City administrator, Mike Fisher, testified to the City's explosive population growth from 1990 through 2006. The number of City residents doubled from 1,777 in 1990 to 3,582 in 2004. Based on the 2000 census, the City population grew by 84% during the six-year period preceding the hearing in 2006. To accommodate

that growth, residential development has expanded west to the City limits (along the eastern edge of the quarry) and is expected to continue in the recently annexed area north of the quarry. The City issued 129 building permits issued for single family homes in 2006, the highest amount ever in any one year.

Residential development has also occurred on the west side of the quarry, where the residents of Whispering Oaks plan to seek voluntary annexation to the City. The evidence indicated an urbanization trend surrounding three sides of the quarry property and a population growth pattern that suggests the annexation is based on reasonable foreseeability of the City's need for development. *Mayor of Liberty v. Beard*, 613 S.W.2d 642, 654 (Mo. App.1981) (annexation upheld, in part, due to trend toward urbanization); *City of Parkville v. N. Farms*, 950 S.W.2d 882, 888 (Mo.App.1997) (City's growth pattern shows future need for annexed land).

 MMM argues that undeveloped land exists within the City limits and, thus, there is no need for further expansion. We note, however, that the City's primary purpose in annexing the quarry is not to use that property for development, but, rather, to ensure that the land is used in a manner consistent with the surrounding residential and commercial development. MMM representatives have acknowledged that the quarry has a limited supply of limestone and will likely be transitioned for other uses after three years. The City has expressed concern that the quarry property could be used as a landfill unless annexation occurs. The City has a legitimate interest in having control over the future use of the property because it could significantly affect the success or failure of development plans to the east, north, and west of the quarry. *Gosewisch*, 932 S.W.2d at 840, 848–49. Thus, in determining the reasonableness and necessity of the annexation, the trial court properly considered the desires of neighboring property owners, who have not yet been annexed, and the City's need to have influence in the transitional planning for the quarry.

 Factors six through ten address the need for or beneficial effects of providing municipal services, police protection, and uniform application of zoning ordinances and building codes in the annexed area. In light of the long-term plans for residential and commercial development surrounding the quarry, the City argues it has an interest in ensuring compliance with local operational requirements. The quarry currently operates under a special use permit (SUP) that is not consistently monitored or enforced by Cass County. The City has no plans to change the zoning but intends to strictly enforce the existing requirements regarding the quarry's business hours and to conduct routine inspections to monitor compliance with the SUP. The annexation would also allow the City to exercise better control over the high volume of truck traffic to and from the quarry in order to reduce road congestion and dangerous conditions. The City's interest in ensuring enforcement of regulatory requirements can be properly considered in determining whether the annexation is reasonable and necessary. *Beard*, 613 S.W.2d at 654–55; *N. Farms*, 950 S.W.2d at 890.

Given the lack of inhabitants and limited use of the quarry property, the parties agreed that there would not be much use for City services, other than police protection, in the annexed area. The quarry is currently serviced under a mutual aid agreement by the Cass County Sheriff's Department and the City Police Department. While the need for police protection is infrequent, the evidence showed the City is better equipped to patrol the area more

frequently and respond more quickly than the County when emergencies occur. This factor weighs slightly in favor of annexation. *Norden,* 879 S.W.2d at 729.

The final two factors do not support the City's proposed annexation. There is little or no evidence that the annexation would enhance the value of the quarry property or the regularity of the City's boundaries. However, even without such evidence, the record is sufficient to show that the reasonableness and necessity of the annexation is fairly debatable based on the population growth and development surrounding the quarry, and the City's corresponding need to enforce the current zoning requirements and influence future uses of the property.

MMM has presented additional evidence in support of its position that annexation of the quarry was not reasonable or necessary for proper development of the City. Nevertheless, under our standard of review, "we only examine the evidence to determinate that reasonable people could disagree as to the propriety of annexation." *Effertz Bros., Inc.,* 254 S.W.3d at 64. MMM's contrary evidence only serves to counterbalance that presented by the City and further demonstrates that the need for annexation in this case is fairly debatable.

### CONCLUSION

The judgment is affirmed.

All Concur.