

# *In the*
# *Missouri Court of Appeals*
## *Western District*

| | | |
|---|---|---|
| **CAMERON D. WOODS,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD86799** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **JANUARY 14, 2025** |
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
The Honorable Stacey Lett, Judge

Before Division Three: Mark D. Pfeiffer, Presiding Judge, Gary D. Witt, Judge and
Thomas N. Chapman, Judge

Cameron D. Woods appeals the judgment of the Circuit Court of Cass County, Missouri ("motion court") denying, after an evidentiary hearing, his motion for post-conviction relief pursuant to Rule 24.035.[1] On appeal, Woods claims that his plea counsel ("Counsel") was constitutionally ineffective in failing to call an expert witness at his sentencing hearing to testify about Woods's mental conditions and the abuse he suffered as a child. Finding no error, we affirm the judgment of the motion court.

---

[1] All rule references are to the Missouri Supreme Court Rules (2024).

## Factual and Procedural Background

On July 25, 2019, Woods fired shots into a residence located in Drexel, Missouri, in Cass County. Woods had received a text from someone he knew threatening to kill him that morning.[2] After receiving the text, Woods "kind of snapped." He "did some more drugs" and then went and "shot up the house" of the person's mother. Woods then went to get some groceries and went home. He was later arrested and charged with the class B felony of unlawful use of a weapon, section 571.030.1(9).[3] Woods entered an open guilty plea on March 15, 2021.[4]

On May 3, 2021, Woods was sentenced. At the sentencing hearing, the prosecutor read a victim impact statement written by the owner of the home into which Woods fired shots. The homeowner had written that she remained impacted by the shooting, and stated, "Had I been standing at the kitchen sink that afternoon, those bullets would've hit me in the head." The letter continued that the family had ultimately decided to sell the house because of the shooting.

The sentencing court also had for its consideration a mental evaluation for Woods and a Sentencing Assessment Report ("SAR"). The mental evaluation noted that Woods reported having been physically abused by his father throughout his childhood, although

---

[2] Pursuant to section 509.520, we do not include the names of witnesses other than parties.

[3] All statutory references are to the Revised Statutes of Missouri (2016), as currently updated by supplement unless otherwise indicated.

[4] An open plea of guilt means that there is no agreement as to sentencing between the State and the defendant, and the circuit court has discretion to sentence a defendant to any sentence within the range of punishment for the offense. *Wills v. State*, 321 S.W.3d 375, 378 (Mo. App. W.D. 2010).

he denied a "significant history of serious injuries, illness, or head trauma." Woods had been using drugs regularly and began using methamphetamine in 2016. Woods had been diagnosed with Depressive Disorders, Post-traumatic Stress Disorder ("PTSD"), and Schizophrenia. Woods had been hospitalized approximately seven times for his psychiatric conditions. His "intellectual functioning was estimated to be broadly average."

The SAR noted Woods's drug and alcohol use, his multiple mental health issues including PTSD, and his history of physical abuse by his father. The SAR also included information obtained from Woods's mother ("Mother") that Woods had been expelled from school for threatening to beat up the principal and blow up the school. Mother also provided that Woods was banned from her home because she had seen several of Woods's Facebook posts of him with guns, including an AR-15 in one and a handgun in others; and in one photo, Woods had a gun and was with Mother's young daughter. Mother also indicated that Woods told Mother he was a suspect in a murder case in Independence, Missouri, but had not been charged. Finally, the SAR rated Woods as "high" risk to reoffend based on the domains of family and social support, neighborhood problems, substance use, and peer associations; he was rated a "moderate" risk to reoffend in the domains of education, employment, financial, criminal attitudes, and behavior patterns.

Counsel called Woods's great aunt ("Aunt") to testify on his behalf at sentencing. Aunt testified that Mother is a liar whose relationship with Woods was "very, very traumatic." Aunt testified that Mother used Woods to get attention. Aunt went on to

3

testify that Woods was not usually violent and that his participation in the shooting was "an anomaly." Aunt testified that she would be there to support Woods and see that he gets treatment if he were given probation.

Woods spoke on his own behalf, apologizing to the victim of the shooting who was present, and told the court he was looking forward to participating in substance abuse treatment if he were to receive probation. Woods testified that he was satisfied with the services of Counsel.

Pursuant to 571.030.9(1), the sentencing court was required to sentence Woods to the maximum term for a class B felony, fifteen years' imprisonment. However, because Woods was not charged as a prior or persistent offender, a suspended execution of that sentence with a term of probation was a sentence which was authorized by the statute. The State recommended a fifteen-year sentence, while Woods argued for a fifteen-year sentence, with that sentence suspended and probation. The sentencing court sentenced Woods to fifteen years but did not suspend that sentence and grant probation. (SLF 56, p. 17).

Woods filed a *pro se* motion for post-conviction relief pursuant to Rule 24.035 on October 29, 2021. Counsel filed an amended motion on April 15, 2022. The amended motion alleged that Counsel was ineffective for failing to call an expert witness to testify about Woods's mental issues and the abuse Woods suffered as a child. An evidentiary hearing on the motion was held, wherein an expert ("Expert") testified that he had examined Woods and had learned that Woods had been abused by his father from his preschool years until he left his father's home at age eleven. Father had beaten Woods

4

with a belt causing Woods to have welts on his body at least twice per week. Woods also recalled his father pushing him down a flight of stairs and being swung around until he hit his head on the corner of a couch. Woods's step-mother, whom he believed to be his mother at the time, did not intervene, although she knew that Woods's father was physically abusing him.

Expert testified that Woods had been diagnosed with PTSD and he had intrusive memories as a result. Expert testified that Woods was not always able to avoid stimuli that caused flashbacks in his current prison setting. Expert's opinion was that the PTSD caused recklessness, which was "evident throughout [Woods's] history and also in the offense conduct for which he was convicted." Expert said that PTSD was a "chronic disorder" in which "the symptoms don't remit." Woods abused substances, including methamphetamine, and it caused poor judgment and behavioral dyscontrol. Expert testified that most people, even with substance abuse issues and histories such as Woods's, "don't fire weapons into people's homes." Expert had not performed any kind of risk assessment to determine whether Woods was at risk of committing future offenses.

Counsel also testified at the hearing. Counsel testified:

> With the way [Woods was] charged, really, [the sentencing court] only had two options presented to him. That was either 15 years in prison or a 15-year suspended execution of sentence. So I think it was best to just try to show the human character of Mr. Woods just given the nature of the offense and try to convince [the court] to basically give a shot to Mr. Woods on probation.

5

Counsel was aware of Woods's PTSD diagnosis before sentencing because of the mental evaluation that had been performed prior to sentencing. Counsel testified that he did not consider calling a mental health expert because he "did not want to put the emphasis on mental health[.]" Counsel had been trained that, when there is an open plea, you never put an emphasis on something else causing the committed act. "You always want to kind of just openly admit that you committed the act and then try to present good character." Counsel affirmatively chose not to focus on mental health. Counsel testified that he called Aunt to testify to somewhat impeach Mother's statements in the SAR, to show Woods's good character, and to show that Woods would have family support at home if he were to receive probation. Counsel found Aunt to be very likable and thought she would be a good witness.

The motion court did not find Counsel's performance at Woods's sentencing hearing to be deficient. The judgment noted that Counsel already knew of Woods's mental health issues and it was a matter of informed and reasonable trial strategy for Counsel not to focus on the mental health diagnoses, "but instead to offer an improved home plan and community support for the [court's] consideration of probation for [Woods]." The motion court did not find Expert's testimony to be mitigating. The judgment found, "If anything, [Expert's testimony] reinforces the Court's reasoning for sentencing the defendant to the Department of Corrections. [Expert's] testimony supports the State's argument that the defendant is a danger to the community given his impulsivity, recklessness, and anger[.]" The judgment also concluded that, had Counsel

6

called Expert to testify at sentencing, "[t]here is not a reasonable probability that Movant would have received a lower sentence[.]"  This appeal follows.

## Standard of Review

"Our review of the denial of a Rule 24.035 motion is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Heller v. State*, 554 S.W.3d 464, 468 (Mo. App. W.D. 2018) (internal quotations omitted).  "Error is clear when the record definitely and firmly indicates that the [motion] court made a mistake."  *Taylor v. State*, 403 S.W.3d 683, 686 (Mo. App. W.D. 2013). "We presume that the motion court's findings are correct; thus, the appellant bears the burden of demonstrating clear error."  *Scroggins v. State*, 596 S.W.3d 163, 165 (Mo. App. W.D. 2020).  This Court defers to the credibility determinations of the motion court. *White v. State*, 654 S.W.3d 743, 747 (Mo. App. E.D. 2022).

## Timeliness of Woods's Amended Motion

The motion court found that Woods's amended motion was timely filed pursuant to Rule 24.035(g).  The State agreed below, and included in its proposed findings of fact and conclusions of law that it submitted to the motion court, "The Amended Motion was timely filed.  Abandonment is not an issue."  On appeal, however, the State now takes the position that the circuit court committed error by following the State's representations below, and Woods's amended motion was not timely filed.  The State now argues for the first time that the version of Rule 24.035 that was in effect at the time of Woods's sentencing applied to these proceedings and the amended motion was untimely.  This Court must determine which version of Rule 24.035(g) applied to the filing of Woods's

7

amended motion because this determination bears on the timeliness of the amended motion. *See Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012) (holding that the Court must enforce mandatory time limits for post-conviction motions regardless of whether the State raises the issue).

This Court recently thoroughly examined this issue in the analogous Rule 29.15 context in *Scott v. State*, WD86373, 2024 WL 4887460, at *1 (Mo. App. W.D. November 26, 2024). That opinion's analysis included the following:

> The Missouri Supreme Court has indicated that Missouri Supreme Court Rules are to be interpreted by applying the same principles used for interpreting statutes. *State ex rel. Richardson v. May*, 565 S.W.3d 191, 193 (Mo. banc 2019). If the Supreme Court's intent is clear from the plain and ordinary language of its rule, then the plain meaning of the rule is adopted. *State v. Williams*, 696 S.W.3d 316, 319 (Mo. banc 2024) (citation omitted).
>
> Article V, section 5 of the Missouri Constitution grants the Missouri Supreme Court the authority to establish procedural rules and provides that such rules "shall have the force and effect of law." MO. Const. art. V, § 5; *Williams*, 696 S.W.3d at 318. Generally, laws that are merely procedural apply to pending proceedings upon the effective date of such laws. *See State ex rel. Faith Hosp. v. Enright*, 706 S.W.2d 852, 854 (Mo. banc 1986) (citing *City of Branson v. Biedenstein*, 618 S.W.2d 665, 670 (Mo. banc 1981)); *cf. Stiers v. Director of Revenue*, 477 S.W.3d 611, 618 (Mo. banc 2016) (declaring there to be "no question" that the rules of civil procedure in effect at the time of trial govern the procedural aspects of the trial).

*Id.* at *2-3.

As relevant here, the version of Rule 24.035(g) that became effective on November 4, 2021, provided:

> If no appeal of the judgment sought to be vacated, set aside, or corrected is taken, the amended motion or statement in lieu of an amended motion shall be filed within 120 days of the earlier of the date both a complete transcript consisting of the guilty plea and sentencing hearing has been filed in the trial court and:

> (1) Counsel is appointed, or
>
> (2) An entry of appearance is filed by any counsel that is not appointed but enters an appearance on behalf of movant.

Woods filed his timely *pro se* motion on October 29, 2021, just before the Rule change enlarging the time for counsel to file the amended motion from 60 days to 120 days. His Counsel was appointed on November 4, 2021, and the transcripts from his plea and sentencing hearings were filed on December 16, 2021, after the Rule change. As stated above, laws and rules that are procedural generally apply to pending proceedings upon the date of such laws. *Scott*, 2024 WL 4887460, at *3. Accordingly, under the amended provision, Woods had 120 days from the date the transcripts were filed to file his amended motion, which made the April 15 motion timely.

> The version of Rule 24.035(m) in effect on November 4, 2021, read:
>
> (m) Schedule. This Rule 24.035 shall apply to all proceedings wherein sentence is pronounced on or after January 1, 2018. If sentence was pronounced prior to January 1, 2018, postconviction relief shall continue to be governed by the provisions of Rule 24.035 in effect on the date the motion was filed or December 31, 2017, whichever is earlier.

Although subsection (m) was amended later, effective July 1, 2023, to require all postconviction proceedings to be governed by the version of Rule 24.035 in effect on the date of the movant's *sentencing*, that amendment could not have controlled the filing of the amended motion during the time period relevant to Woods's motion, since there was no indication at the time his motion was due that any version of Rule 24.035(g) applied to Woods's case other than the version then in effect. *See Scott*, 2024 WL 4887460, at *4.

9

Because Woods's amended motion was timely, we proceed to address his appeal on the merits.

## Analysis

Woods's single point on appeal is that the motion court clearly erred in denying his motion for post-conviction relief because Counsel was constitutionally deficient in failing to investigate and present mitigating evidence in the form of expert testimony at Wood's sentencing hearing. We disagree.

"A claim of ineffective assistance of counsel at sentencing following a guilty plea is a 'cognizable' claim under Rule 24.035." *Cherco v. State*, 309 S.W.3d 819, 825 (Mo. App. W.D. 2010). "If a defendant aggrieved by ineffective assistance of counsel at sentencing is willing to abide by the guilty plea or conviction, the defendant nonetheless may have recourse under a post-conviction motion if the defendant demonstrates there is a reasonable probability that sentencing was influenced by ineffective assistance of counsel during sentencing." *Id.* at 830. "[T]he two-pronged test from *Strickland* applies equally to claims of ineffective assistance of counsel arising out of a sentencing hearing." *Id.* at 825 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

*Strickland* set forth two components for a claim of ineffective assistance of counsel: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice in this context, the petitioner must show that without the deficient performance, "the result of

10

the sentencing would have been different, specifically, that his sentence would have been lower." *Dawson v. State*, 611 S.W.3d 761, 769 (Mo. App. W.D. 2020) (quoting *Jones v. State*, 541 S.W.3d 694, 697 (Mo. App. W.D. 2018)). "If either the performance prong or the prejudice prong is not met, then we need not consider the other, as the claim of ineffective assistance of counsel must fail if either prong is not present." *Nigro v. State*, 467 S.W.3d 881, 885 (Mo. App. W.D. 2015) (internal quotation omitted).

In this case, Woods fails to establish that he was prejudiced by Counsel's alleged errors, which is dispositive of his claim. He failed to show at the motion hearing that Expert's testimony, had Counsel presented it at his sentencing, would have resulted in Woods receiving probation, which was the only other outcome authorized by statute. First, Expert's testimony did not provide significant information that was not already known to the sentencing court by way of the mental report and the SAR, which the sentencing court considered in reaching its judgment. The court already knew that Woods had been physically abused as a child, that he was a heavy substance abuser, and that he had diagnoses of PTSD, depression, and schizophrenia. Although Expert did provide more expansive accounts of the abuse Woods suffered, this testimony would not have created a reasonable likelihood that his sentence would have been different. While Woods argued to the motion court that the evidence was necessary to show the sentencing court the effect his mental illness may have played on the date of the offense, he ignores the fact this evidence also establishes that his mental health issues would make it difficult for him to control his behavior, and he would be a danger to the community if he were to receive probation.

11

Woods cites two United States Supreme Court cases, *Wiggins v. Smith*, 539 U.S. 510 (2003), and *Porter v. McCollum*, 558 U.S. 30 (2009), both of which are inapposite. Both *Wiggins* and *Porter* were death penalty cases. The mitigating evidence the defendants had urged should have been presented at their sentencing hearings was to be considered to determine whether their lives should be spared from execution, as opposed to spending the remainder of their lives in prison. *Wiggins*, 539 U.S. at 514; *Porter*, 558 U.S. at 31. Contrarily, in this case, the mitigating evidence of Woods's abuse history and mental health diagnosis, while potentially sympathetic, was being used to urge the sentencing court to allow Woods to be placed on probation and remain out in the public rather than serving his lengthy prison sentence. This is not a distinction without a difference.

The motion court found that, "[i]f anything, [Expert's testimony] reinforces the Court's reasoning for sentencing the defendant to the Department of Corrections. [Expert's] testimony supports the State's argument that the defendant is a danger to the community given his impulsivity, recklessness, and anger[.]" The motion court concluded that there was not a reasonable probability that Woods would have received probation had the additional testimony been presented by Counsel. We do not find this conclusion to be clearly erroneous.

## Conclusion

For all of the above-stated reasons, we affirm the judgment of the motion court.

_____
Gary D. Witt, Judge

All concur

13